WEBB *v.* COUNTY BOARD OF EDUCATION OF DYER
COUNTY, TENNESSEE, ET AL.

No. 83–1360.   Argued October 29, 1984—Decided April 17, 1985

STEVENS, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, POWELL, REHNQUIST, and O'CONNOR, JJ., joined. BRENNAN, J., filed an opinion concurring in part and dissenting in part, in which BLACKMUN, J., joined, *post*, p. 244. MARSHALL, J., took no part in the consideration or decision of the case.

*Charles Stephen Ralston* argued the cause for petitioner. With him on the briefs were *Jack Greenberg, Julius LeVonne Chambers, Deborah Fins, Gail J. Wright,* and *Richard H. Dinkins.*

*S. Russell Headrick* argued the cause for respondents. With him on the briefs was *Thomas R. Prewitt, Sr.**

JUSTICE STEVENS delivered the opinion of the Court.

The Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U. S. C. § 1988, authorizes a court to award a reasonable attorney's fee to the prevailing party in "any action or proceeding" to enforce certain statutes, including

*\*Robert E. Williams* and *Douglas S. McDowell* filed a brief for the Equal Employment Advisory Council as *amicus curiae* urging affirmance.

42 U. S. C. § 1983.[1]  Petitioner was represented by counsel in local administrative proceedings and in a subsequent § 1983 action challenging the termination of his employment as a public school teacher.  He ultimately prevailed and was awarded attorney's fees for the time his lawyer spent on the judicial proceedings, but denied fees for the time spent in proceedings before the local School Board.  The question presented is whether the District Court correctly excluded the time spent pursuing optional administrative proceedings from the calculation of a "reasonable fee" for the prevailing party.

In the spring of 1974 respondent Dyer County Board of Education, terminated the employment of petitioner, who was a black elementary school teacher with tenure.  Petitioner retained counsel to assist him in demonstrating that his discharge was unjustified and to obtain appropriate relief.

A Tennessee statute provides that public school teachers may only be dismissed for specific causes, and guarantees a hearing on charges warranting dismissal.[2]  Petitioner sought and eventually obtained a series of hearings before the Board at which his counsel presented testimony supporting his claim that the dismissal was unjustified.  Because the Board had not provided him with written charges or a pretermination hearing, and because there was reason to believe

---

[1] In relevant part, § 1988 provides:

"In any action or proceeding to enforce a provision of §§ 1981, 1982, 1983, 1985 and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

[2] Tenn. Code Ann. § 49–5–511(a) (1983) ("No teacher shall be dismissed . . . except as provided in this part. . . . The causes for which a teacher may be dismissed are as follows: incompetence, inefficiency, neglect of duty, unprofessional conduct, and insubordination"); § 49–5–512 ("A teacher, having received notice of charges against him, may . . . demand a hearing before the board").

that the Board's action was racially motivated,[3] petitioner also claimed that his constitutional rights had been violated. Negotiations with the Board continued until the summer of 1978 when the Board finally decided to adhere to its decision to dismiss the petitioner.

On August 13, 1979, the petitioner commenced this action in the United States District for the Western District of Tennessee. He alleged that the Board action was unconstitutional and that various civil rights statutes, 42 U. S. C. §§ 1981, 1982, 1983, 1985, afforded him a basis for monetary and equitable relief against the respondent Board and various individual defendants associated with his dismissal.[4] The respondents filed an answer to the complaint, a motion to dismiss or for summary judgment, and certain discovery requests to which the petitioner responded. App. 21–29, 48. In March 1981, the petitioner filed with the District Court a partial record of the administrative proceedings. *Id.*, at 30–31.

On October 14, 1981, the case was settled by the entry of a consent order awarding the petitioner $15,400 in damages and dismissing the action with prejudice.[5] Under the consent decree, the Board also agreed to reinstate the petitioner and treat him as having resigned on the day of dismissal. Adverse comments were to be removed from his employment file. The matter of an award of attorney's fees was reserved for future resolution by the parties or by the court.

---

[3] The petitioner contended that he had been discharged, in part, because of the complaints of white parents about his administration of corporal punishment to their children. He claimed that no other teacher in Dyer County engaging in such activities had ever been reprimanded, and that he had been singled out for punishment because of his race. App. 8–9.

[4] Specifically, the petitioner sought reinstatement, backpay, and $1 million in damages. On behalf of a class consisting of all black teachers and black applicants for teaching positions, the petitioner also sought monetary and equitable relief against the Board's allegedly discriminatory employment practices. *Id.*, at 14–17.

[5] *Id.*, at 32–34.

During subsequent negotiations, the Board conceded that the petitioner was a "prevailing party" entitled to an award of attorney's fees, but the parties could not agree on the amount of the award. After the negotiations proved unsuccessful, petitioner filed a motion for an award of fees under 42 U. S. C. § 1988. The motion was supported by an affidavit containing an itemized description of the time spent by the petitioner's counsel on the matter from April 5, 1974, through September 11, 1981.[6] The affidavit also set forth the attorney's professional qualifications and his regular charges during the period involved.[7] The petitioner requested a total fee of $21,165, based on an hourly rate of $120 and including an upward adjustment of 25% "in light of the peculiar difficulties involved in this particular kind of case and the unusual nature of the hours involved in the Board proceedings." App. 56.

Respondents, on the other hand, took the position that a reasonable fee would not exceed $5,000. They objected to the hourly rate,[8] to certain miscellaneous, unrecorded hours, and to the request for an upward adjustment of 25%. In

---

[6] *Id.*, at 39–55. The time schedule submitted by the petitioner was a reconstruction of the hours his counsel spent on the matter. Tr. of Fee Hearing 10. Contemporaneously recorded time sheets are the preferred practice. See *Hensley* v. *Eckerhart*, 461 U. S. 424, 441 (1983) (BURGER, C. J., concurring). The schedule detailed a "total" of 141.1 hours of which 82.8 hours are specifically attributable to the administrative proceedings which finally terminated in August 1978. The balance of 58.3 hours has been treated by the parties and the courts below as having been spent in connection with the action in federal court.

[7] Counsel's affidavit stated his regular hourly charges for routine commercial work were $60 in 1974–1976, $90 in 1977–1979, $105 in 1980, and $120 in 1981. App. 55. Two expert witnesses testified for the petitioner that the request of $120 per hour for 141.1 hours was reasonable. Tr. of Fee Hearing 3–23, 30–46.

[8] The respondent's three experts offered varying opinions on the reasonable hourly fee which was said to be between $50 and $100 for the administrative hearings and between $60 and $100 for the court proceedings. See App. 63–72; Tr. of Fee Hearing 108–114.

addition, the respondents contended that the petitioner was not entitled to receive a fee for services performed by counsel in the administrative proceedings.

The District Court awarded a fee of $9,734.38 plus expenses. In making that award, the District Court accepted respondents' position that the time spent in the School Board proceedings should be excluded, but otherwise resolved all issues in petitioner's favor.[9] The Court of Appeals affirmed. 715 F. 2d 254 (CA6 1983).[10] Because of an apparent conflict in federal authority on the availability of attorney's fees under § 1988 for time spent in state administrative proceedings prior to the filing of a federal civil rights action,[11] we granted certiorari. 466 U. S. 935 (1984).

The petitioner argues that he is entitled to a fee award for the services of his counsel during the School Board hearings

---

[9] In calculating the fee, the District Court applied an hourly rate of $125 to the 58.3 hours that were not recorded as having been spent on the administrative proceedings. The court allowed the 25% upward adjustment sought by the petitioner even though he did not prevail on the class action allegations in his complaint and received only a small portion of the damages sought. The court also awarded $625 (5 hours) for the time spent litigating the fee application.

[10] The respondents unsuccessfully challenged the District Court's calculations on appeal. 715 F. 2d, at 259–260. Although the District Court rendered the award without the guidance of this Court's decisions in *Hensley* v. *Eckerhart*, 461 U. S. 424 (1983), and *Blum* v. *Stenson*, 465 U. S. 886 (1984), the respondents did not file a petition for certiorari from the adverse decision of the Court of Appeals, and our review of the District Court's calculations consequently is limited to its denial of fees for the time spent on the hearings before the School Board.

[11] Compare *Ciechon* v. *City of Chicago*, 686 F. 2d 511, 524–525 (CA7 1982), with 715 F. 2d 254 (CA6 1983) (case below), *Horacek* v. *Thone*, 710 F. 2d 496, 499–500 (CA8 1983), *Latino Project, Inc.* v. *City of Camden*, 701 F. 2d 262, 264–265 (CA3 1983), *Estes* v. *Tuscaloosa County*, 696 F. 2d 898, 900 (CA11 1983) *(per curiam)*, *Redd* v. *Lambert*, 674 F. 2d 1032, 1036–1037 (CA5 1982), and *Blow* v. *Lascaris*, 668 F. 2d 670, 671 (CA2) *(per curiam)*, cert. denied, 459 U. S. 914 (1982). See also *Bartholomew* v. *Watson*, 665 F. 2d 910, 912–914 (CA9 1982); *Brown* v. *Bathke*, 588 F. 2d 634, 638 (CA8 1978).

on either of two theories: (1) that those hearings were "proceeding[s] to enforce a provision of [§ 1983]" within the meaning of § 1988; or (2) that the time was "reasonably expended" in preparation for the court action and therefore compensable under the rationale of *Hensley* v. *Eckerhart*, 461 U. S. 424, 433 (1983).   We consider each of these theories.

## I

The relevant language in § 1988[12] is similar to language in § 706(k) of Title VII of the Civil Rights Act of 1964, which authorizes an award of attorney's fees in "any action or proceeding" under that Title.[13]   In *New York Gaslight Club, Inc.* v. *Carey*, 447 U. S. 54 (1980), we held that § 706(k) authorizes fees for work performed pursuing a state administrative remedy "to which the complainant was referred pursuant to the provisions of Title VII." *Id.*, at 71.   The petitioner argues that the reasoning in *Carey* supports a comparable award for the services performed in the School Board proceedings in this case.

*Carey*, however, arose under a statute that expressly requires the claimant to pursue available state remedies before commencing proceedings in a federal forum.[14]   There is no comparable requirement in § 1983, and therefore the reasoning in *Carey* is not applicable to this case.   As we noted in *Smith* v. *Robinson*, 468 U. S. 992 (1984):

---

[12] See n. 1, *supra*.

[13] 78 Stat. 261, 42 U. S. C. § 2000e–5(k) ("In any action or proceeding under [Title VII] the court, in its discretion, may allow the prevailing party, other than the [Equal Employment Opportunity] Commission or the United States, a reasonable attorney's fee as part of the costs . . .").

[14] As we explained in *Carey:*

"It is clear from this scheme of interrelated and complementary state and federal enforcement that Congress viewed proceedings before the EEOC and in federal court as supplements to available state remedies for employment discrimination.   Initial resort to state and local remedies is mandated, and recourse to the federal forums is appropriate only when the State does not provide prompt or complete relief."   447 U. S., at 65.

> "The difference between *Carey* and this case is that in *Carey* the statute that authorized fees, Title VII, also required a plaintiff to pursue available state administrative remedies. In contrast, nothing in § 1983 requires that a plaintiff exhaust his administrative remedies before bringing a § 1983 suit. See *Patsy* v. *Florida Board of Regents*, 457 U. S. 496 (1982)." *Id.*, at 1011, n. 14.

Because § 1983 stands "as an independent avenue of relief" and petitioner "could go straight to court to assert it," *ibid.*, the School Board proceedings in this case simply do not have the same integral function under § 1983 that state administrative proceedings have under Title VII.

Congress only authorized the district courts to allow the prevailing party a reasonable attorney's fee in an "action or proceeding to enforce [§ 1983]." Administrative proceedings established to enforce tenure rights created by state law simply are not any part of the proceedings to enforce § 1983,[15] and even though the petitioner obtained relief from his dismissal in the later civil rights action, he is not automatically entitled to claim attorney's fees for time spent in the administrative process on this theory.[16]

## II

In *Hensley* v. *Eckerhart, supra,* at 424, we discussed the method to be employed by the district court in determining

---

[15] Of course, competent counsel will be motivated by the interests of the client to pursue state administrative remedies when they are available and counsel believes that they may prove successful. We cannot assume that an attorney would advise the client to forgo an available avenue of relief solely because § 1988 does not provide attorney's fees for work performed in the state administrative forum.

[16] This interpretation of § 1988 is consistent with the numerous references in its legislative history to promoting the enforcement of the civil rights statutes "in suits," "through the courts" and by "judicial process." See, *e. g.*, S. Rep. No. 94–1011, pp. 2, 6 (1976); H. R. Rep. No. 94–1558, p. 1 (1976). Cf. *Burnett* v. *Grattan*, 468 U. S. 42, 50 (1984) ("[T]he dominant characteristic of civil rights actions" is that "they belong in court").

the amount of an attorney's fee award to the prevailing party in a civil rights action covered by § 1988. At the outset, we emphasized that the amount to be awarded necessarily depends "on the facts of each case," 461 U. S., at 429, and that the exercise of discretion by the district court must be respected, *id.*, at 432. We explained that the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.*, at 433. We also observed that the party seeking an award of fees has the burden of submitting "evidence supporting the hours worked and rates claimed." *Ibid.*

In this case, the petitioner contends that all of the hours spent by his attorney in the School Board proceedings were "reasonably expended" to enforce the rights protected by § 1983. More specifically, since witnesses were examined and opposing arguments considered and refuted in those proceedings, the work was analogous to discovery, investigation, and research that are part of any litigated proceeding, and therefore should be compensable as though the work was performed after the lawsuit was actually filed. "In sum," petitioner concludes, "*Hensley* requires that fees for work done from the onset of an attorney-client relationship be awarded if that work was reasonably related to the enforcement of federal civil rights unless the hours spent would not, in the exercise of normal billing judgment, be 'properly billed to one's *client.*'" Brief for Petitioner 19 (quoting *Hensley* v. *Eckerhart,* 461 U. S., at 434).

The Court's opinion in *Hensley* does not sweep so broadly. The time that is compensable under § 1988 is that "reasonably expended *on the litigation.*" *Id.*, at 433 (emphasis added). When the attorney's fee is allowed "as part of the costs"—to use the language of the statute—it is difficult to treat time spent years before the complaint was filed as having been "expended on the litigation" or to be fairly comprehended as "part of the costs" of the civil rights action.

Of course, some of the services performed before a lawsuit is formally commenced by the filing of a complaint are performed "on the litigation." Most obvious examples are the drafting of the initial pleadings and the work associated with the development of the theory of the case.[17] In this case, however, neither the trial judge nor the parties had any difficulty identifying the dividing line between the administrative proceeding and the judicial proceeding. The five years of work before August 1979 were easily separated from the two years of work thereafter.[18] The petitioner made no suggestion below that any discrete portion of the work product from the administrative proceedings was work that was both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement. The question argued below was whether the time spent on the administrative work during the years before August 1979 should be included in its entirety or excluded in its entirety. On this record, the District Court correctly held that all of the administrative work was not compensable.[19]

---

[17] See also Fed. Rule Civ. Proc. 27 (providing a procedure for preserving testimony before the bringing of a federal cause of action).

[18] Indeed, in the 11 months between the late summer of 1978, when the adverse decision in the administrative proceeding became final, and the summer of 1979, when the petitioner brought this civil rights action, less than one-quarter hour was spent by counsel on the case—to write a letter renewing a previous settlement offer. App. 47.

[19] JUSTICE BRENNAN suggests that the petitioner's filing of the transcript of the administrative hearings in the record of the civil rights action might justify an award of attorney's fees, in part, because that transcript substituted for the affidavits the petitioner would have had to file in response to the motion for summary judgment. *Post*, at 255. That motion, however, was filed only by three of the individual defendants, and addressed a statute of limitations defense. App. 27. On this record, we find no indication that the 82.8 hours spent in the administrative proceeding were in any way equivalent to the time that would have been spent preparing the affidavits necessary to respond to this summary judgment motion, or that any part of the administrative record was necessary for that purpose. Moreover, the District Court judge's decision on all other

"We reemphasize that the district court has discretion in determining the amount of a fee award."[20] *Id.*, at 437. When such an award is appealed, the reviewing court must evaluate its reasonableness with appropriate deference. Considering the governing legal principles, the petitioner's burden of establishing his entitlement to the requested fee, and the evidence and arguments presented below, we conclude that the District Court's decision to deny any fees for time spent pursuing optional administrative remedies was well within the range of reasonable discretion.

Accordingly, the judgment of the Court of Appeals is affirmed.

*It is so ordered.*

JUSTICE MARSHALL took no part in the consideration or decision of this case.

JUSTICE BRENNAN, with whom JUSTICE BLACKMUN joins, concurring in part and dissenting in part.

The Court concludes today that attorney's fees for work in optional state administrative proceedings are not "automatically" awardable to a prevailing civil rights litigant under 42 U. S. C. § 1988, but that fees may be awarded for a "discrete

---

fee questions was extremely favorable to the petitioner, and it is quite probable that this decision was influenced by counsel's extensive experience representing petitioner before the School Board. A remand would only serve to prolong "what must be one of the least socially productive types of litigation imaginable: appeals from awards of attorney's fees, after the merits of a case have been concluded, when the appeals are not likely to affect the amount of the final fee." *Hensley* v. *Eckerhart*, 461 U. S., at 442 (BRENNAN, J., concurring in part and dissenting in part).

[20] We also reemphasize that the district court's consideration of a fee petition "should not result in a second major litigation." *Hensley* v. *Eckerhart, supra,* at 437. The District Court Judge in this case quite properly admonished the parties to limit adversary hostilities and to avoid excessive cross-examination of fee witnesses. *E. g.,* Tr. of Fee Hearing 141.

portion" of such work to the extent that it was "useful and of a type ordinarily necessary" to the successful outcome of the subsequent litigation. *Ante*, at 241, 243. I agree with these conclusions but write separately on two counts. First, it is important in light of the American Rule and the confusion among lower courts that we identify with precision the reason why such awards *ever* may be authorized pursuant to § 1988.[1] Second, I disagree with the Court's conclusion that the petitioner in this case presented insufficient evidence to justify a District Court award of fees for a "discrete portion" of his work at the state level. The District Court did not consider the evidentiary merits of this issue, holding instead as a matter of law that § 1988 bars prevailing plaintiffs from recovering fees for work in optional administrative proceedings. App. to Pet. for Cert. 40a. Because the Court rejects this reasoning, the judgment below should be reversed and the case should be remanded for consideration whether and to what extent Webb is entitled to additional fees under the standards announced today.

## I

## A

Although the Court decides that prevailing civil rights litigants may recover fees for "discrete" work in optional administrative proceedings, it does not seek to refute the arguments advanced by the respondents and the courts below that the language and policies of § 1988 affirmatively bar awards of such fees. The question of § 1988's intended breadth arises in a variety of contexts, and lower courts have divided over the proper analysis to apply in considering fee requests for work beyond the four corners of civil rights

---

[1] This Court repeatedly has held that, with several narrow exceptions, the American Rule bars recovery of attorney's fees in the absence of an express statutory authorization. See, *e. g.*, *Summit Valley Industries, Inc.* v. *Carpenters*, 456 U. S. 717, 721 (1982); *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U. S. 240, 247 (1975).

litigation. See *ante,* at 239, n. 11. I believe that § 1988 should be viewed as prescribing two threshold requirements for recovery of fees for work in a proceeding collateral to a successful civil rights action: first, the collateral proceeding must have been an "action or proceeding" within the meaning of § 1988; and second, the work in the collateral proceeding must have demonstrably contributed "to enforce[ment of] a provision" of the civil rights laws.[2] The proper application of this analytic framework supports the Court's conclusion that § 1988 authorizes limited awards of fees for work performed in optional state administrative proceedings.

With respect to the first requirement, our decision in *New York Gaslight Club, Inc.* v. *Carey,* 447 U. S. 54 (1980), compels the conclusion that a state administrative hearing may be a "proceeding" within the meaning of § 1988. We held in *Carey* that state administrative proceedings fall within the definition of an "action or proceeding" as that phrase is used in the Title VII fee provision, § 706(k) of the Civil Rights Act of 1964, 78 Stat. 261, 42 U. S. C. § 2000e–5(k). 447 U. S., at 61–66. We reasoned there that "[i]t cannot be assumed that the words 'or proceeding' . . . are mere surplusage," and that "Congress' use of the broadly inclusive disjunctive phrase 'action or proceeding'" demonstrated an intent to permit fees for work beyond the litigation itself. *Id.,* at 61. This reasoning applies squarely to § 1988, which employs precisely the same phraseology as the Title VII fee provision. The relevant Committee Reports emphasize Congress' intent to pattern § 1988 after the Title VII fee provision,[3] and they

---

[2] Section 1988 provides in relevant part that "[i]n any action or proceeding to enforce a provision of §§ 1981, 1982, 1983, 1985 and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

[3] See, *e. g.,* S. Rep. No. 94–1011, pp. 4, 6 (1976) (Title VII cases provide "appropriate standards" for applying § 1988); H. R. Rep. No. 94–1558, p. 8 (1976). See also *New York Gaslight Club, Inc.* v. *Carey,* 447 U. S. 54, 70, n. 9 (1980).

include citations to Title VII cases in which fees were awarded for work in administrative proceedings.[4] The respondents argue that § 1988's use of the phrase "or proceeding" could have been intended merely to refer to certain federal-court matters that are not technically "actions," such as bankruptcy proceedings. Brief for Respondents 11. This argument presumably could be made about the Title VII fee provision as well; in either case, such a parsimonious construction would not accord with Congress' general intent for "the courts to use the broadest and most effective remedies available to achieve the goals of our civil rights laws." S. Rep. No. 94–1011, p. 3 (1976).

As the Court emphasizes today, there is an important distinction between Title VII cases and § 1983 cases that is relevant to the extent to which fees for collateral proceedings may be authorized: Title VII is governed by an administrative exhaustion requirement, while § 1983 generally is not. *Ante*, at 240–241; see also *Smith* v. *Robinson*, 468 U. S. 992, 1011, n. 14 (1984).[5] The issue of exhaustion does not bear on the definition of the phrase "action or proceeding," however,

---

[4] In emphasizing that the phrase "prevailing party" was "not intended to be limited to the victor only after entry of a final judgment following a full trial on the merits," for example, the House Report cited approvingly to *Parker* v. *Matthews*, 411 F. Supp. 1059 (DC 1976), aff'd *sub nom. Parker* v. *Califano*, 182 U. S. App. D. C. 322, 561 F. 2d 320 (1977). See H. R. Rep. No. 94–1558, at 7. The plaintiff in *Parker* had unsuccessfully pursued her administrative remedies before filing an action in federal court. Shortly after the complaint was filed, the agency reversed itself and the case was settled. The District Court awarded fees for both the administrative and court proceedings. 411 F. Supp., at 1065–1066.

[5] See generally *Patsy* v. *Florida Board of Regents*, 457 U. S. 496 (1982). Exceptions include a limited exhaustion requirement for adult prisoners that may be imposed at the discretion of the court, see 42 U. S. C. § 1997e; *Patsy* v. *Florida Board of Regents, supra*, at 507–512, and the rule that defendants in civil or administrative enforcement proceedings generally may not avoid those proceedings by filing a § 1983 action in federal court, see, *e. g., Trainor* v. *Hernandez*, 431 U. S. 434 (1977); *Huffman* v. *Pursue, Ltd.*, 420 U. S. 592 (1975).

but cuts instead to § 1988's second threshold requirement: fees may be awarded only if the action or proceeding was pursued "to enforce a provision" of the civil rights laws. See n. 2, *supra*. Where Congress requires resort to administrative remedies as a predicate to invoking judicial remedies, the administrative remedies obviously are integral "to enforce[ment of] a provision" of the civil rights laws. That is precisely the point of *Carey*. See 447 U. S., at 63, 65.

Although § 1983 generally does not require exhaustion of state remedies, prevailing litigants nevertheless may be able to demonstrate that ancillary state proceedings played a critical role in "enforc[ing] a provision" of the civil rights laws. For example, courts sometimes choose to make ancillary proceedings a part of the civil rights litigation. Federal courts occasionally have exercised their discretion to abstain and have required litigants to clarify state-law issues in state forums before proceeding with the federal actions.[6] Similarly, resort to state administrative proceedings might be necessary in developing and implementing a remedial plan to comply with a federal court's injunction in a complex civil rights case.[7] Reliance on these collateral proceedings may frequently accord with Congress' general intent for courts to " 'use that combination of Federal law, common law and State law as will be best adapted to the object of the civil rights laws.' " S. Rep. No. 94–1011, at 3, n. 1. Where a court incorporates such proceedings as part of the adjudicatory or remedial scheme, surely they function demonstrably "to enforce a provision" of the civil rights laws within the meaning of § 1988. If we adopted the respondents' definition of the term "or proceeding," however, and concluded that the term

---

[6] See, *e. g.*, *Harrison* v. *NAACP*, 360 U. S. 167 (1959); *Bartholomew* v. *Watson*, 665 F. 2d 910 (CA9 1982); *Neal* v. *Brim*, 506 F. 2d 6, 9–11 (CA5 1975); *Blouin* v. *Dembitz*, 489 F. 2d 488, 491–492 (CA2 1973).

[7] See, *e. g.*, *Bond* v. *Stanton*, 630 F. 2d 1231, 1233 (CA7 1980) (participation in state agency's development of remedial plan); *Northcross* v. *Board of Education*, 611 F. 2d 624, 637 (CA6 1979), cert. denied, 447 U. S. 911 (1980).

includes only bankruptcy and certain other federal-court cases not technically "actions" and normally touching only tangentially on civil rights, such reliance on ancillary state proceedings would be severely undermined. As the Ninth Circuit reasoned in *Bartholomew* v. *Watson*, 665 F. 2d 910, 913 (1982), a case holding that fees incurred in state court pursuant to *Pullman* abstention are recoverable under § 1988, a contrary rule "would encourage forum shopping and interfere with efficient allocation of issues and cases between the state and federal systems."[8] The legislative history of § 1988 cannot be read as supporting such an anomolous result.

Where the decision to pursue administrative proceedings rests solely with the plaintiff, it cannot be presumed that the proceedings are integrally related to the enforcement of federal civil rights. As the Court observes, school board hearings should not "automatically" be viewed as part of the § 1983 remedial scheme. *Ante*, at 241. Nothing in the logic of *Carey*, *Smith*, or our other cases, however, compels the contrary conclusion that *all* fees for such proceedings "automatically" be excluded. Once it is recognized that state administrative proceedings *may* fall within the rubric "action or proceeding" in appropriate circumstances, courts must strike a necessarily uneasy balance between two arguably conflicting considerations. On the one hand, Congress clearly intended to enable civil rights litigants to proceed expeditiously to court, and time spent in optional state proceedings may therefore frequently be unnecessary to vindication of civil rights claims. On the other hand, if a successful litigant can demonstrate that the fruits of an antecedent

---

[8] The court in *Bartholomew* also observed that under the contrary rule "[p]laintiffs seeking relief under section 1983 would be compelled to oppose any move from federal court, despite the fact that an initial determination of certain matters by the state court might simplify or even moot the federal action because of the loss of the right to claim attorney's fees under section 1988. A plaintiff's attorney would be penalized if some of his client's section 1983 claims were disposed of in a state forum. The ability to obtain counsel would therefore suffer." 665 F. 2d, at 913.

administrative proceeding contributed directly to the successful outcome in federal court and obviated the need for comparable work in the federal action, there is nothing in the language or policies of § 1988 that would justify penalizing him for not having gone straight into court. A contrary rule would provide an unwise incentive for every potential litigant to commence a federal action at the earliest possible moment in order to steer himself into § 1988's safe harbor.

There is certainly nothing in § 1988 that limits fee awards to work performed after the complaint is filed in court. For example, it is settled that a prevailing party may recover fees for time spent before the formal commencement of the litigation on such matters as attorney-client interviews, investigation of the facts of the case, research on the viability of potential legal claims, drafting of the complaint and accompanying documents, and preparation for dealing with expected preliminary motions and discovery requests. 2 M. Derfner & A. Wolf, Court Awarded Attorney Fees ¶ 16.02[2][b], p. 16–15 (1984). This time is "reasonably expended on the litigation," *Hensley* v. *Eckerhart*, 461 U. S. 424, 433 (1983), in part because careful prefiling investigation of the facts and law is required by the ethical rules of our profession,[9] the Federal Rules of Civil Procedure,[10] and the realities of civil rights litigation.[11] This sort of preparatory

---

[9] See, *e. g.*, ABA Model Code of Professional Responsibility EC 7–4, EC 7–25, DR 7–102(A), DR 2–109(A) (1980); ABA Model Rules of Professional Conduct, Rule 3.1 (1983).

[10] See, *e. g.*, Fed. Rule Civ. Proc. 11 (attorney's signature constitutes a certification that the "pleading, motion, or other paper" is "well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law"). See also Advisory Committee Note to Fed. Rule Civ. Proc. 11, 28 U. S. C. App., p. 723 (1982 ed., Supp. I). Cf. Fed. Rule Civ. Proc. 27 (mechanism for deposing witnesses prior to initiation of action).

[11] In *Burnett* v. *Grattan*, 468 U. S. 42, 50–51 (1984), we recently observed:

"Litigating a civil rights claim requires considerable preparation. An injured person must recognize the constitutional dimensions of his in-

work, along with discovery that typically occurs after litigation commences, may often be accomplished in the course of administrative proceedings that precede litigation. Taking testimony at an administrative hearing may reduce or eliminate the need for interviewing and deposing witnesses later after suit is filed, and negotiation with administrative officials may narrow disputes and sharpen issues in the very same way as settlement discussions held after the litigation begins. Once it is decided that *any* time spent before the filing of a complaint is compensable, there is no reason to draw artificial distinctions based on whether the time was spent preparing directly for the litigation or instead in an administrative proceeding that contributed and led directly to litigation.[12]

A rule requiring potential plaintiffs *absolutely* to bypass administrative proceedings if they wished to become eligible for attorney's fees would create skewed incentives that Con-

---

jury. He must obtain counsel or prepare to proceed *pro se*. He must conduct enough investigation to draft pleadings that meet the requirements of federal rules . . . . At the same time, the litigant must look ahead to the responsibilities that immediately follow filing of a complaint. He must be prepared to withstand various responses, such as a motion to dismiss, as well as to undertake additional discovery."

[12] See, *e. g.*, *Ciechon* v. *Chicago*, 686 F. 2d 511, 525 (CA7 1982) (sustaining award of fees for administrative work because "[t]he interest served by encouraging vigorous representation at an administrative proceeding" in the § 1983 context "is the same interest as that. . . . in the Title VII scheme of enforcement"); *Brown* v. *Bathke*, 588 F. 2d 634, 638 (CA8 1978) ("The awarding of attorney's fees to a prevailing party in a civil rights action for work done in other proceedings lies in the sound discretion of the federal district court"; partial award sustained). Cf. *Natural Resources Defense Council, Inc.* v. *EPA*, 703 F. 2d 700, 713 (CA3 1983) (interpreting Equal Access to Justice Act as permitting recovery of fees incurred in obtaining information through the Freedom of Information Act even though "that route to information is not conventional discovery"; FOIA work "may well have been more expeditious than conventional discovery"); *Chrapliwy* v. *Uniroyal, Inc.*, 670 F. 2d 760, 767 (CA7 1982) (awarding fees for administrative proceeding not required by Title VII, because proceeding "contributed to the ultimate termination of the Title VII action"), cert. denied, 461 U. S. 956 (1983).

gress could not possibly have intended. The Committee Reports to § 1988 emphasize that plaintiffs should not be denied fees for work that enables them to prevail short of full-blown litigation of their federal claims and that thereby "help[s] to lessen docket congestion."[13] It is at least debatable whether administrative proceedings may sometimes offer a swifter and cheaper means of sharpening issues and discovering relevant evidence than litigation in federal court. Moreover, although notions of comity properly have not led Congress or the courts to impose an exhaustion requirement, surely it can be conceded that prior administrative proceedings may sometimes enhance federal-court resolution of civil rights disputes.[14] Unless we are willing to conclude that Congress not only intended not to *require* reliance on state administrative proceedings, but positively to *discourage* resort to such proceedings in all circumstances in the § 1983 context, reasonable standards for limited recovery of fees should be fashioned.[15]

---

[13] H. R. Rep. No. 94–1558, at 7 ("A 'prevailing' party should not be penalized for seeking an out-of-court settlement, thus helping to lessen docket congestion"). See also *id.*, at 4, n. 7 (if constitutional claim is substantial and arises out of "common nucleus of operative fact" with nonconstitutional claims, courts may award fees even though relief is obtained solely on nonconstitutional grounds); S. Rep. No. 94–1011, at 5 ("[P]arties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief").

[14] See generally *Patsy* v. *Florida Board of Regents*, 457 U. S., at 513 ("[T]he relevant policy considerations do not invariably point in one direction, and there is vehement disagreement over the validity of the assumptions underlying many of them"); *id.*, at 516–517 (O'CONNOR, J., concurring); *id.*, at 517–518 (WHITE, J., concurring in part); *id.*, at 519, 532–536 (POWELL, J., dissenting).

[15] *Carey* supports rather than detracts from this analysis. Under Title VII, complainants may commence actions in federal court 240 days after they initiate state proceedings. A strict construction of the statute would suggest that fees be awarded only for the first 240 days of a state proceeding, for after that there is nothing preventing a suit in federal court. As we noted in *Carey*, however, "[i]t is doubtful that the systems of many

## B

This analysis leads me to concur with the Court's conclusion that fees may be recovered for administrative work that is "useful and of a type ordinarily necessary" to successful civil rights litigation. *Ante*, at 243. A standard for determining what is useful and necessary should encompass three factors. First, a court must conclude that the claimed portions of administrative work were independently reasonable.[16] Second, the court must find that the administrative work, or some "discrete" portion of it, *ibid.*, significantly contributed to the success of the federal-court outcome and eliminated the need for work that otherwise would have been required in connection with the litigation.[17] Finally, fees should be awarded only to the extent that the administrative work was equally or more cost-effective than the comparable work that would have been required during the course of liti-

---

States could provide complete relief within 240 days," 447 U. S., at 66, n. 6; the state proceedings in that case, for example, took three years. We nevertheless held that fees were properly awarded past the point of exhaustion, noting that "[t]he existence of an incentive to get into federal court, such as the availability of a fee award, would ensure that almost all Title VII complainants would abandon state proceedings as soon as possible." *Ibid.* This sort of pragmatic approach should govern our analysis where civil rights plaintiffs have not been required to resort to state procedures for any length of time.

[16] The party requesting fees for such work must submit evidence documenting the hours claimed, and if the documentation is inadequate, or the claimed hours appear "excessive, redundant, or otherwise unnecessary," the court should reduce the award accordingly. Cf. *Hensley* v. *Eckerhart*, 461 U. S. 424, 433–434 (1983); *Copeland* v. *Marshall*, 205 U. S. App. D. C. 390, 401–402, 641 F. 2d 880, 891–892 (1980) (en banc). See generally 2 M. Derfner & A. Wolf, Court Awarded Attorney Fees ¶ 16.02[5], pp. 16–29 to 16–36 (1984).

[17] This requirement is consistent with the policy against awarding fees for redundant or unnecessary work, see n. 16, *supra;* as Congress has not required exhaustion of administrative remedies, fees for administrative work should not be awarded to the extent that work in litigation subsequently covered the same ground.

gation. A 1-day administrative hearing eliciting testimony that eliminates the need for three days of depositions is something to be encouraged and rewarded, but if instead that hearing took three days and produced the same information as could have been obtained during one day of depositions, the claimant should not recover for more than the one day it would have taken to conduct the depositions. In these as in all § 1988 matters, the district court must have a broad "zone of discretion" in resolving disputes. *Hensley* v. *Eckerhart*, 461 U. S., at 442 (BRENNAN, J., concurring in part and dissenting in part). Mathematical precision is impossible, and it should be enough if the court "has articulated a fair explanation" for its award after reviewing the request and the supporting documentation and applying its own experience and common sense. *Id.*, at 455.

## II

The District Court in this case held as a matter of law that § 1988 bars recovery of all fees associated with optional state administrative proceedings. App. to Pet. for Cert. 33a–40a. Today the Court rejects such an absolute prohibition and holds instead that fees may be awarded in the informed discretion of a district court if the work was "useful" and substituted for work at the judicial stage that would have been "ordinarily necessary" to a successful outcome. *Ante*, at 243. I believe this conclusion requires a reversal and remand so that the District Court may apply the correct legal rule and exercise its informed discretion regarding Webb's possible entitlement to additional fees.

Webb's fee application and supporting evidence amply establish a prima facie entitlement to fees for at least some portion of the administrative work under the standards discussed above. First, Webb's application specified in detail the work performed in the course of the administrative proceedings, and along with the supporting affidavits and testimony would enable the District Court to make an informed

decision regarding the independent reasonableness of this work.

Second, Webb made a strong showing that the fruits of the administrative proceedings eliminated the need for extensive discovery after the complaint was filed and significantly contributed to the settlement of the federal litigation. During the Board proceedings, Webb's attorney was able to elicit substantial testimony from administrators, teachers, and students supporting Webb's allegation that he had been fired from his teaching job for racially discriminatory reasons.[18] With this record in hand, Webb's counsel had to devote virtually no time to discovery after litigation commenced. After motions to dismiss and for summary judgment were filed against Webb, he sought to meet his burden of "set[ting] forth specific facts showing that there [was] a genuine issue for trial," Fed. Rule Civ. Proc. 56(e), by filing a transcript of the administrative hearings along with a supporting brief in opposition. Thereafter, the parties reached a full settlement while the motions were under advisement and several weeks

---

[18] Webb was discharged for allegedly unprofessional conduct and insubordination, without further specification of the charges. He contended that he had been dismissed as a result of white parents' complaints about his paddling of their children. See App. 8–9. At the hearings, Webb's counsel elicited testimony that paddling was a widely used and accepted means of discipline at Newborne Elementary School. Tr. 72, 99–100, 102–103, 113, 118, 122–123, 126, attached to Affidavit of Avon N. Williams, Jr., Record Doc. No. 73. School administrators, teachers, and students testified that Webb did not paddle students any more harshly than did other teachers, that Webb disciplined black and white students in an even-handed manner, and that prior to Webb's dismissal no other teacher ever had been reprimanded or disciplined for paddling students. *Id.*, at 73–74, 78, 81, 83–84, 86, 113, 119, 123–124, 126, 150. There was significant testimony that, in the recent wake of desegregation, a number of white students misbehaved in Webb's classroom, that school administrators did not assist Webb or other black teachers in maintaining classroom order, and that the administrators did not support Webb when white parents complained about Webb's disciplining of their children. *Id.*, at 29–30, 66, 77–78, 162, 208.

before trial was scheduled to commence. As several experienced civil rights attorneys testified at the fee hearing, a "substantial part" of the administrative work therefore appears to have obviated the need for Webb to rely on interrogatories, depositions, extensive affidavits, and other discovery devices that unquestionably would have been compensable under § 1988.[19] The testimony elicited by Webb's counsel during the administrative proceedings presumptively contributed to the settlement; as a matter of common sense, a defendant is not likely to settle a case prior to a ruling on its motion for summary judgment and only weeks before the scheduled commencement of trial if the plaintiff has not developed and presented a credible case.[20]

---

[19] "You can look at the time spent on a matter such as this as to the discovery aspects, the prefiling investigation which there inevitably was in this case and which there almost always is where you have administrative proceedings that take place.

"Facts are discovered, positions taken, parties respond whether it is by one demand letter or a demand for a hearing, which is then held, and the parties state their positions regardless of the result, that is, part of the factual basis for the complaint and ultimately for the trial. So one could safely make the statement that at least a substantial part of that ground would not have to be plowed in actually litigating the case." Tr. of Fee Hearing 13–14.

See also id., at 8 (hours spent in administrative hearings were reasonable), 21 (hearings "part of the discovery process which leads to hopefully a settlement or, at least, enables you to foreshorten the formal discovery in federal court"), 41 (hearings were "essential" and "intrinsic" to success in litigation), 45 (hearings were "just part and parcel of the entire package of the case"). The defense counsel himself acknowledged that "after the complaint was filed no affirmative act of any kind was performed by counsel for the Plaintiff before settlement was made, that is, no discovery was taken . . . ." Id., at 19.

[20] With respect to the effect that the administrative discovery had on settlement, one veteran civil rights litigator testified: "I don't think one would have occurred without the other. I think there is a record made. I think good counsel for the Defendant in the case obviously has access to that and is able to weigh, as perhaps a public body in the emotion of the moment can weigh, the risk of continued litigation as opposed to settlement and advise his client taking into account all the usual factors,

Finally, with the information about counsel's services and the administrative transcripts before it, and given its general familiarity with federal discovery practices, the District Court would be able to exercise its sound discretion in determining whether and to what extent the fruits of the administrative work could have been obtained more expeditiously through standard discovery and to adjust any award accordingly.

At the very least, Webb would therefore appear to have established a prima facie entitlement to fees for the "discrete" portion of his counsel's work relating to the Board hearings that were transcribed and relied upon in litigating and settling this action. Notwithstanding this showing, the Court today affirms the denial of *all* fees associated with the administrative proceedings. The Court reasons that "[t]he question argued below was whether the time spent on the administrative work . . . should be included in its entirety or excluded in its entirety." *Ante*, at 243. I agree that the respondents consistently have argued that this time should be "excluded in its entirety" and that the courts below accepted this proposition as a matter of law, but I have been unable to find anything in the record suggesting that Webb himself argued for such an all-or-nothing resolution. Similarly, the Court chastises Webb for his failure to make a "suggestion below that any discrete portion of the work product from the administrative proceedings was work that was both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement." *Ibid.* Webb's counsel, however, submitted an affidavit detailing his services and presented substantial testimony that the administrative work in its entirety was "useful" and "necessary" to the outcome of the litigation, and I fail to see how this case differs from any in which a district court is required

---

what it is going to cost you to litigate and so forth. And I think that is one of the bases upon which competent counsel are going to look at to see what happened down below, in effect." *Id.*, at 16–17.

to exercise its discretion in sorting out the useful from the superfluous, the necessary from the unnecessary, and the reasonable from the unreasonable. It is precisely because this sorting process is required that evaluation of fee petitions is committed to the sound discretion of the district courts.[21] Many meritorious fee petitions contain requests for time or rates that the district court may decide are excessive, and it is up to the court to make appropriate adjustments. Surely the submission of a good-faith petition requiring downward adjustment does not bar *all* recovery on the grounds that the claimant did not include a hierarchy of "next-best" requests or presumptively desired no recovery if he could not receive his petitioned amount "in its entirety."[22]

---

[21] See, *e. g.*, *Blum* v. *Stenson*, 465 U. S. 886, 902, n. 19 (1984) ("[D]istrict court is expressly empowered to exercise discretion in determining whether an award is to be made and if so its reasonableness"); *Hensley* v. *Eckerhart*, 461 U. S., at 433–437 (especially 437, district court "necessarily has discretion in making this equitable judgment"); *id.*, at 443 (BRENNAN, J., concurring in part and dissenting in part); H. R. Rep. No. 94–1558, at 8 (Congress intended to "leav[e] the matter to the discretion of the judge").

[22] The Court also notes that several years elapsed between the administrative hearings and the ultimate settlement of the federal litigation, and observes that "it is difficult to treat time spent years before the complaint was filed as having been 'expended on the litigation.'" *Ante*, at 242. I agree with the Court that the passage of time may be one factor to be considered in deciding whether a portion of administrative work served "to enforce a provision" of the civil rights laws; as the elapsed time increases, it is more likely that administrative proceedings were pursued for other reasons and were not integrally related to the litigation itself. Reliance on this factor in the case before us is misplaced, however. The Board's final evidentiary hearing was held in April 1978, and the complaint was not filed until August 1979. The delay appears to have resulted from at least two factors that were beyond Webb's control: first, the Board's long delay in rendering a final decision, and second, the Board's delay in responding to Webb's precomplaint settlement attempts. See App. 46–47 (summary of professional services). Another two years passed before the litigation was settled, but again much of that time appears to have been consumed by settlement discussions. *Id.*, at 50–54. Given that the inquiry is whether any of the fruits of the administrative proceeding were "useful" and eliminated the need for other work that would have been "necessary" in the federal

The Court reasons, however, that "the district court's consideration of a fee petition 'should not result in a second major litigation,'" *ante*, at 244, n. 20, quoting *Hensley v. Eckerhart*, 461 U. S., at 437, and it concludes that the District Court's decision in this case "was well within the range of reasonable discretion," *ante*, at 244. With all respect, the Court's reasoning escapes me. I have previously argued that the district courts should enjoy a broad "zone of discretion" in awarding fees and that appellate deference accordingly should approach its zenith in this context. *Hensley v. Eckerhart*, 461 U. S., at 442 (concurring in part and dissenting in part). Such deference is appropriate, however, only where "a district court has articulated a fair explanation for its fee award in a given case." *Id.*, at 455. Here the District Court denied all fees for the administrative work *solely* on the premise that such awards are forbidden *as a matter of law*. App. to Pet. for Cert. 40a. Today the Court has rejected this reasoning, concluding instead that claimants are *not* barred from such recovery as a matter of law and that they may recover appropriate fees pursuant to the standards freshly coined in the Court's opinion. I would have thought the logical conclusion would be that the District Court could not have properly exercised its discretion given that it proceeded on an erroneous legal premise. It is not our mission to exercise the district courts' discretion for them or to conduct *de novo* evaluation of fee petitions; these are matters appropriately left to remand. See *Hensley v. Eckerhart, supra,* at 437 (remanding for application of proper

---

action, the relevance of the Court's emphasis on a readily discernable "dividing line" between these proceedings is not immediately apparent. *Ante*, at 243. A petitioner's entitlement to partial administrative fees should not turn in any way on whether the respondents were able to drag matters out or on whether the parties reasonably attempted to reach a settlement before going into court. Here again, it makes no sense to create incentives compelling potential litigants to get into court at the earliest opportunity without attempting to resolve a controversy through other means.

standards) (discretion "appropriate[ly]" lies in district court "in view of district court's superior understanding of the litigation"). Where a civil rights litigant has successfully persuaded this Court to grant certiorari to resolve an important and unsettled issue of § 1988 fees entitlement, convinced us that the sole ground relied on by the courts below was erroneous, and submitted a fee request that may justify a further award by the District Court in the *proper* exercise of its discretion, I am at a loss why the Court should refuse to remand out of "deference" to the District Court's errors or a desire to discourage further litigation however meritorious the claim for fees may be.[23] Such legerdemain squares neither with the legislative policies behind § 1988[24] nor with the policies of fairness that undergird our legal system.

---

[23] And to the extent that the fee request did not precisely track the standards newly set forth in today's opinion, it is inappropriate to penalize Webb for his lack of prescience.

[24] The purpose of § 1988 is to "promote the enforcement of the Federal civil rights acts, as Congress intended, and to achieve uniformity in those statutes and justice for all citizens." H. R. Rep. No. 94–1558, at 9. See also S. Rep. No. 94–1011, at 2 ("[F]ee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain"). These goals are not likely to be advanced if plaintiffs who successfully appeal erroneous interpretations of § 1988 are denied the opportunity to benefit from the application of the correct standards.