RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0354p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

HRT ENTERPRISES,

*Plaintiff-Appellee/Cross-Appellant*,

*v.*

CITY OF DETROIT, MICHIGAN.

*Defendant-Appellant/Cross-Appellee*.

Nos. 24-1068/1116

─────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:12-cv-13710—David M. Lawson, District Judge.

Argued: October 21, 2025

Decided and Filed: December 22, 2025

Before: GRIFFIN, THAPAR, and MATHIS, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Mary Massaron, PLUNKETT COONEY, Bloomfield Hills, Michigan, for City of Detroit. Mark Granzotto, MARK GRANZOTTO, P.C., Berkley, Michigan, for HRT Enterprises. **ON BRIEF:** Mary Massaron, PLUNKETT COONEY, Bloomfield Hills, Michigan, for City of Detroit. Mark Granzotto, MARK GRANZOTTO, P.C., Berkley, Michigan, for HRT Enterprises.

─────────────

## OPINION

─────────────

GRIFFIN, Circuit Judge.

The district court awarded attorney fees to HRT Enterprises after it prevailed on its federal takings claim against the City of Detroit. The parties cross-appealed, asserting that the district court abused its discretion when determining the fee award. We agree that the district

court erred in concluding that it had no discretion to award fees for work performed by HRT's counsel in state-court takings proceedings and in the City's bankruptcy, and that the district court erred in awarding expert witness fees under 42 U.S.C. § 1988(c).  Accordingly, we vacate the district court's order and remand for a recalculation of the fee award.[1]

## I.

## A.

HRT brought a takings claim against the City in state court and a jury returned a verdict in the City's favor in 2005.  In 2008, HRT then filed suit in federal court, alleging a post-2005 takings claim under 42 U.S.C. § 1983.  The district court dismissed the action without prejudice after ruling that, under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), HRT had to exhaust state-law remedies for the City's alleged post-2005 taking before it could commence a federal action.  HRT accordingly returned to state court in 2009.  That action was dismissed on claim preclusion grounds, and the state court of appeals affirmed.  *HRT Enters. v. City of Detroit*, No. 304057, 2012 WL 3055221, at *3 (Mich. Ct. App. July 26, 2012) (per curiam).

Now that its claim for just compensation had been denied under state law, as required under *Williamson County*, HRT returned to federal court and filed this § 1983 action in August 2012.  Litigation proceeded until the City filed for bankruptcy in July 2013, which automatically stayed the case.

Attention then turned to the bankruptcy, where HRT filed a $7 million proof of claim.  Later, the City filed a proposed plan for confirmation and counsel jointly representing HRT and two other creditors filed an objection, arguing that the plan's proposal to treat them as general unsecured creditors would violate the Fifth Amendment.

---

[1]Judge Thapar would have reversed the jury's verdict in favor of HRT on the grounds that res judicata barred this suit.  Had the verdict been reversed, HRT would no longer be a "prevailing party" and therefore would not be entitled to attorney fees under 42 U.S.C. § 1988.  Because the majority held otherwise, however, Judge Thapar joins this opinion in full.  *Cf. In re Flint Water Cases*, 53 F.4th 176, 213 (6th Cir. 2022) (Thapar, J., concurring in part and in the judgment).

In further briefing and at a hearing, HRT's counsel asserted that the Takings Clause of the Fifth Amendment requires just compensation, the Takings Clause trumps the Bankruptcy Clause (and, consequently, bankruptcy law), and the plan could not be confirmed as proposed because it would allow the City to pay less than just compensation. The bankruptcy court seemingly agreed, as it excepted HRT's takings claim from discharge under 11 U.S.C. § 944(c)(1), which meant that HRT could return to district court and pursue full compensation there.

The district court reopened the case in January 2015. And, following two jury trials, the district court entered judgment in favor of HRT in September 2023, which we recently affirmed.

B.

As the prevailing party, HRT moved for $1,796,626.87 in attorney fees under 42 U.S.C. § 1988 for work performed from 2009 until the final verdict. To support its request, HRT presented billing records. The records were far from perfect.

For example, Mark Demorest, the principal attorney, organized his fees into four categories: the instant case and the bankruptcy, the 2009 state-court lawsuit, the subsequent state-court appeal, and an ongoing sewer dispute with the City. But his records commingled entries for the instant case, the bankruptcy, the sewer dispute, and additional proceedings concerning blight tickets issued by the City. Blight-ticket entries were also commingled with entries for the 2009 state-court lawsuit. And Neil Strefling, co-counsel, provided only threadbare descriptions of his work, such as "Research, calls," "Conf w/KT, and "Work on file."

In response, the City argued that HRT's request for $1,796,626.87 should be denied because its records failed to provide a reasonable basis to support such an award. The City countered that $300,000 would be sufficient (1,200 hours at a rate of $250 per hour) or, alternatively, that $500,000 should be the upper limit. The City also argued that § 1988 did not provide for expert witness fees in this action

The district court held HRT's motion for attorney fees in abeyance to allow the parties to meet and confer. HRT agreed to eliminate 75 hours, and the City proposed awarding $600,000

total (2,000 hours at a rate of $300 per hour).  HRT also filed another motion to include $72,763.58 for work performed, post-verdict.

When considering HRT's motions for attorney fees, the district court expressed "grave doubts about the propriety of the extremely large fee sought in this case," especially because HRT had provided "poor descriptions" for several entries and commingled numerous hours "expended in several entirely separate matters, for which they have no legal grounds for seeking an award of fees."  To account for these perceived failings, the district court "reduce[d] the lodestar in rough proportion to the observable incidence of disallowable fees" by applying "a 33% discount against the gross number of compensable hours to account for the pervasive corruption of the billing records."  This yielded 2,091 hours of compensable pre-verdict work, 1,078 hours less than HRT requested.  With the addition of work performed post-verdict, the district court found that HRT reasonably expended 2,259.6 hours in total.

At the next step, determining a reasonable hourly rate, the district court noted that HRT's records made it "impossible to determine reliably the number of hours that reasonably and legitimately were expended by each lawyer who worked on the case."  Given this, the district court found it was more appropriate to use an average hourly rate rather than "partitioning the allowable fees among the several lawyers employed."  For assistance, it looked to a state bar report on median hourly rates and, based on this report, set the reasonable hourly rate at the "overall market average" of $300 per hour.

Multiplying the number of reasonable hours (2,259.6) by the reasonable hourly rate ($300) yielded a lodestar benchmark of $677,880, which the district court found did not require further adjustment.  But the district court then concluded that expert witness fees could be awarded in this action and added $40,906.25.  Together with expenses, HRT's total award was $720,486.25.

The City and HRT cross-appealed.

II.

We review a district court's award of attorney fees for an abuse of discretion. *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 618 (6th Cir. 2013). A district court abuses its discretion when it uses an erroneous legal standard, applies the law improperly, or relies on clearly erroneous factual findings. *Id.*

III.

The issues raised by the parties boil down to (1) whether the district court abused its discretion in calculating the fee award, including whether it erred in disallowing work performed by HRT's counsel in the state-court takings proceedings and the City's bankruptcy;[2] and (2) whether the district court abused its discretion in awarding expert witness fees under § 1988(c). We address each in turn.

A.

To properly calculate a fee award, a district court must first determine the lodestar by multiplying the "reasonable number of hours expended" by "a reasonable hourly rate." *Freed v. Thomas*, 137 F.4th 552, 560–61 (6th Cir. 2025); *see also Murphy v. Smith*, 583 U.S. 220, 227 (2018) (reiterating that the lodestar is presumed to represent a reasonable fee). "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Where the documentation is inadequate, "the district court may reduce the award accordingly." *Id.*

HRT claimed 3,169 hours for pre-verdict work.[3] The district court reduced this amount by 33% to 2,091 hours based on the "pervasive corruption" of HRT's billing records. Much of this corruption, according to the district court, flowed from HRT's inclusion of work performed in other cases, including the state-court takings proceedings and the bankruptcy. And, under the district court's reading of our caselaw, fees are never recoverable under § 1988 for work

---

[2]HRT does not appeal the district court's disallowance of fees related to the sewer dispute or the blight tickets.

[3]Neither party challenges the district court's findings regarding post-verdict work.

performed "in any proceeding separate from the litigation before the district court in which attorney fees are sought."

To be sure, we have held that fees for "a *completely* separate case" are generally unrecoverable under § 1988. *Binta B.*, 710 F.3d at 631 (emphasis added). But we have also recognized that *Webb v. Board of Education of Dyer County*, 471 U.S. 234 (1985), and *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986), provide an exception for work performed in certain related proceedings. *Binta B.*, 710 F.3d at 629–30 (discussing *Webb* and *Delaware Valley*). The district court erred in failing to recognize this exception and to consider, in its discretion, whether work performed in the state-court takings proceedings and the bankruptcy could be awarded.

1.

In *Webb*, the Court stated a district court has discretion to award fees under § 1988 for work performed in another proceeding that was "both useful and of a type ordinarily necessary to advance the civil rights litigation." 471 U.S. at 243–44. As an example, the Court cited *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54 (1980), where the Court affirmed an award of fees related to state proceedings because governing law required the claimant to pursue available state remedies before it could commence federal proceedings.[4] *Webb*, 471 U.S. at 240. And here, just as in *Carey*, governing law required HRT to pursue available state remedies before commencing this federal takings action.

To recap, HRT first filed suit in federal court in 2008. But, at that time, "a property owner whose property ha[d] been taken by a local government" was required to wait "until a state court ha[d] denied his claim for just compensation under state law" before bringing a takings claim in federal court. *Knick v. Twp. of Scott*, 588 U.S. 180, 184 (2019) (overruling

---

[4]That *Carey* involved 42 U.S.C. § 2000e-5(k), not § 1988, is a distinction without a difference. *See Webb*, 471 U.S. at 240–41; *see also Delaware Valley*, 478 U.S. at 560 ("Given the common purpose of both [fee-shifting statutes] to promote citizen enforcement of important federal policies, we find no reason not to interpret both provisions governing attorney's fees in the same manner."). *Compare* 42 U.S.C. § 1988(b) (providing that in "any action or proceeding . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs"), *with id.* § 2000e-5(k) (providing that in "any action or proceeding . . . the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs").

*Williamson County*).  Because a state court had not yet denied just compensation on HRT's post-2005 takings claim, the district court dismissed the action without prejudice.  HRT accordingly went to state court in 2009 and, after being under denied just compensation under state law, filed this federal action, as it was then allowed to do.

These state-court takings proceedings were not only useful and of a type ordinarily necessary to advance HRT's federal takings claim—they were required under law.  Accordingly, the district court had discretion to award fees for work performed in these proceedings under § 1988.  *Webb*, 471 U.S. at 243–44; *see also Sullivan v. Hudson*, 490 U.S. 877, 888 (1989) (stating that where "proceedings are intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees, they should be considered part and parcel of the action for which fees may be awarded").  The district court erred in concluding otherwise.

2.

In *Delaware Valley*, the Court held that awarding fees for work performed in separate proceedings that were "crucial to the vindication of [the prevailing party's] rights . . . was entirely proper and well within the zone of discretion afforded [to district courts]."  478 U.S. at 561 (citation modified).  Here, HRT sought to vindicate its right to just compensation under the Fifth Amendment.  *Knick*, 588 U.S. at 190, 192 (reiterating that "a property owner acquires an irrevocable right to just compensation immediately upon a taking"); *see also Jacobs v. United States*, 290 U.S. 13, 16 (1933) (stating that the Constitution guarantees the right to recover just compensation, not inadequate compensation).  And the City's bankruptcy imperiled HRT's right to just compensation.

Under its proposed plan of confirmation, the City sought to pay HRT (and other unsecured creditors) a pro-rata fraction of its claim and then discharge the remainder.  To protect against this, HRT had to file an objection to the City's proposed plan and demonstrate to the bankruptcy court that the Takings Clause trumps the Bankruptcy Clause (and bankruptcy law), and the plan could therefore not be confirmed as proposed because it would allow the City to pay less than full compensation.  As a result of HRT's objection, the bankruptcy court excepted its

claim from discharge, which allowed HRT to return to district court and pursue its takings claim up to the full amount. If, however, HRT had not participated in the bankruptcy, it would have certainly received less than full compensation in the bankruptcy and would not have been entitled to anything more in district court. Thus, HRT's litigation in the bankruptcy was "crucial to the vindication" of its Fifth Amendment right to full compensation. *See Delaware Valley*, 478 U.S. at 561. The district court therefore had discretion to award fees under § 1988 for work performed in these proceedings, and it erred in concluding otherwise.[5]

In sum, the district court abused its discretion in disallowing, as a matter of law, any fees for work performed in the state-court takings proceedings and the bankruptcy because they fall within the exception for separate-but-related proceedings established in *Webb* and *Carey*. We also note that HRT could only request these fees under § 1988 in district court, not in state or bankruptcy court. *N.C. Dep't of Transp. v. Crest St. Cmty. Council, Inc.*, 479 U.S. 6, 15 (1986) ("[O]nly a court in an action to enforce one of the civil rights laws listed in § 1988 may award attorney's fees."); *Child.'s Ctr. for Developmental Enrichment v. Machle*, 612 F.3d 518, 522–23 (6th Cir. 2010) (affirming that only the tribunal hearing the substantive § 1983 claim may award attorney fees under § 1988).

B.

This leaves the final issue—whether the district court abused its discretion in awarding $40,906.25 in expert witness fees under § 1988(c). The Court has held "that when a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of [28 U.S.C.] § 1821(b), absent contract or explicit statutory authority to the contrary."[6] *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 439 (1987). According to the district court, § 1988(c) authorized an award of expert witness fees in this § 1983 action. We disagree.

---

[5]HRT's counsel jointly represented other creditors in the bankruptcy, however; only work performed to vindicate HRT's Fifth Amendment right to just compensation, not the rights of others, should be considered on remand.

[6]Section 1821(b) limits witness fees to "$40 per day for each day's attendance" and an "attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance."

Section 1988(b) provides that in "any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, [among others], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." In *West Virginia University Hospitals, Inc. v. Casey*, the Court considered whether that provision's use of "attorney's fees" embraced expert fees and concluded that it did not.[7] 499 U.S. 83, 97, 101–02 (1991). In response, Congress added § 1988(c), *see* Civil Rights Act of 1991, Pub. L. No. 102-166, § 113, 105 Stat. 1071, 1079; *Landgraf v. USI Film Prods.*, 511 U.S. 244, 251 (1994), which provides that in "awarding an attorney's fee under subsection (b) in any action or proceeding to enforce a provision of section 1981 or 1981a . . . the court, in its discretion, may include expert fees as part of the attorney's fee."

Under the plain language of § 1988(c), expert fee-shifting is expressly allowed in actions or proceedings, but only those to enforce a provision of § 1981 or § 1981a. The statute does not reference § 1983, and we take Congress to mean only what it explicitly says. *See Casey*, 499 U.S. at 86–87; *Crawford Fitting*, 482 U.S. at 445. Further, as a matter of statutory interpretation, the expression of one thing is the exclusion of another. *See NPF Franchising, LLC v. SY Dawgs, LLC*, 37 F.4th 369, 383 (6th Cir. 2022) (applying the canon of expressio unius est exclusio alterius). Because § 1988(c) speaks only to expert fee-shifting in actions or proceedings to enforce § 1981 or § 1981a, the statute necessarily excludes expert fee-shifting in actions or proceedings to enforce a provision of § 1983.

Accordingly, the district court abused its discretion when it awarded expert witness fees under § 1988(c) in this § 1983 action.

\*     \*     \*

Because we conclude that the district court abused its discretion in disallowing, as a matter of law, any fees for work performed in separate proceedings and in awarding expert witness fees under § 1988(c), we need not and do not address the parties' other arguments

---

[7]Regarding "costs," we have concluded that this encompasses incidental and necessary expenses to furnish effective and competent representation, such as reasonable photocopying, travel, and telephone costs. *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013). But costs such as these are not at issue here.

regarding the reasonability of the hours expended or the hourly rate.  *See Freed*, 137 F.4th at 563 (declining to address other arguments when vacating and remanding a fee award).

IV.

For the foregoing reasons, we vacate the district court's award of attorney fees and remand for further proceedings consistent with this opinion.