ROYAL CROWN COLA CO., Plaintiff,

v.

The COCA–COLA COMPANY, Dr. Pepper Co., Pepsico, Inc., Philip Morris Incorporated, and The Seven–Up Company, Defendants.

Civ. A. No. 86–107–COL.

United States District Court,
M.D. Georgia,
Columbus Division.

Dec. 11, 1987.

Albert W. Stubbs, Hatcher, Stubbs, Land, Hollis & Rothschild, Columbus, Ga., David L. Foster, Willkie Farr & Gallagher, New York City, James H. Wallace, Jr., Wiley & Rein, Washington, D.C., for plaintiff.

Trammell E. Vickery, Hansell & Post, Atlanta, Ga., Ronald G. Carr, Morrison & Foerster, Washington, D.C., Victor S. Freidman, Fried, Frank Harris, Shiver & Jacobson, New York City, for Dr. Pepper.

Abe Krash, Daniel A. Rezneck, Robert S. Thorpe and David E. Green, Arnold & Porter, Washington, D.C., for Philip Morris Companies, Inc. and The Seven–Up Co.

Richard A. Marchetti, Page, Scrantom, Harris & Chapman, Columbus, Ga., Richard T. Colman, P.C., Howrey & Simon, Washington, D.C., for Pepsico Inc.

Frank C. Jones, King & Spalding, Atlanta, Ga., Coudert Bros., Gordon B. Spivack, Jonathan M. Jacobson, New York City for Coca Cola.

## OPINION AND ORDER AWARDING ATTORNEYS' FEES AND EXPENSES

ELLIOTT, District Judge.

Although the complaint in this complex antitrust action was not filed until June, 1986, the actions which prompted it and the activities which preceded the filing began months earlier. Historically, Royal Crown Cola Co. (Royal Crown), The Coca–Cola Company (Coca–Cola), Dr Pepper Co. (Dr Pepper), Pepsico, Inc. (Pepsico) and The Seven–Up Company (Seven–Up) have been competitors in the soft drink industry. In

January, 1986, Philip Morris Incorporated (Philip Morris) announced that Pepsico would purchase from Philip Morris the Seven–Up soft drink business. Counsel for Royal Crown immediately began the legal and factual research necessary to determine whether a challenge to the Pepsico acquisition was appropriate pursuant to Sec. 7 of the Clayton Act, 15 U.S.C. Sec. 18. Then, less than a month later, in February, 1986, Coca–Cola announced that it had agreed to acquire Dr Pepper. This required a thorough assessment of the facts of the Coca–Cola acquisition and a reassessment of the competitive effects of both acquisitions.

During the course of Royal Crown's research and the drafting of a complaint and preparation of briefs to be submitted in support of a request for injunctive relief the Federal Trade Commission (FTC) began an administrative investigation of the Pepsico and Coca–Cola acquisitions and this provided Royal Crown with an opportunity to present its views to the FTC concerning the anticompetitive effects of the acquisitions on Royal Crown. Counsel for Royal Crown made several presentations to members of the FTC and members of the FTC staff seeking to induce the FTC to attack the transactions, these presentations being considered by Royal Crown to be appropriate elements of its overall attack on the transactions.

Because of the continuing uncertainty about the results of the FTC investigation, and when the waiting period mandated by law would expire, counsel for Royal Crown had to be prepared to file its injunction action on a moment's notice, it appearing that the parties were prepared to consummate the proposed acquisitions immediately after FTC clearance. Deciding that it could not safely wait any longer, Royal Crown filed its complaint seeking to enjoin the acquisitions on June 19, 1986.

This was the beginning of intense litigation activity [1] and further monitoring of the FTC proceedings, the ultimate result being that all of the Defendants abandoned the proposed acquisitions, this Court in the meantime having issued a temporary restraining order with regard to both acquisitions and a preliminary injunction with regard to the Coca–Cola acquisition.

Thereafter, Royal Crown filed a petition seeking an award for attorney's fees and expenses which was vigorously opposed by the Defendants. On January 16, 1987, this Court ruled that "the injunctive relief obtained by Royal Crown in this action as well as Royal Crown's vigorous prosecution and discovery efforts constituted a substantial factor and a catalyst in motivating the Defendants to terminate their acquisitions," and that "in this factual setting Section 16 of the Clayton Act thus entitles Royal Crown to an award of attorneys fees and expenses."

Since that time all parties have submitted briefs, affidavits and, in some instances, reply briefs, making their suggestions to the Court concerning an appropriate award, and this opinion will set out the Court's determination.

Royal Crown's initial memorandum setting out the amount of fees and expenses claimed for services billed through March 31, 1987, was filed on April 23, 1987, and the claim is for $1,612,591 [2] ($1,326,702 being allocated to attorneys' fees and $285,889 being allocated to costs and expenses), but there have been some developments in the case since that time which require adjustment. Even so, the Court will analyze the claim as originally filed and then make the appropriate adjustments.

■ Royal Crown has broken its total claim down in such manner as to set forth the share of the claim assessed by it against each Defendant, the amounts being determined by dividing the litigation into four time periods, according to which acquisitions were then pending, and allocating to each Defendant only its share of the fees and expenses incurred. Being familiar with the history of the matter and what

---

1. A brief summary of this activity is set out in this Court's opinion of January 16, 1987.

2. A supplemental claim for additional fees for the period March 31, 1987, to October 1, 1987, increased this figure to $1,733,879.

transpired during the respective time periods, the Court finds the allocations to be reasonable and adopts them.

We are initially reminded that in making an award of attorneys' fees we are to follow the guidelines set out in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), and, where appropriate, apply the criteria there listed.

### The Time and Labor Required

Counsel for Royal Crown were required to devote extensive time and labor to this case.

### The Novelty and Difficulty of the Questions

This antitrust case was quite complex and exceedingly difficult. It was a matter of major importance to all of the parties and had nationwide implications.

### The Skill Requisite to Perform the Legal Service Properly

Counsel were required to exercise a high degree of skill in handling this case properly and it is obvious that they did so.

### The Preclusion of Other Employment by the Attorney Due to Acceptance of the Case

In accepting employment one of the law firms representing the Plaintiff was effectively precluded from other employment for a considerable period of time. This feature will be hereinafter discussed more fully.

### The Customary Fee

The customary fees charged by attorneys engaged in complex antitrust work are usually at the higher range of fees charged in the legal profession, and the fees claimed by Plaintiff's counsel in this case are well within that range.

### Whether the Fee is Fixed or Contingent

No contingent fees are involved in this case.

### Time Limitations Imposed by the Client or the Circumstances

The time limitations imposed by this litigation on counsel at various stages were severe.

### The Amount Involved and the Results Obtained

The amount involved here was quite substantial and the Plaintiff obtained the complete relief sought.

### The Experience, Reputation, and Ability of the Attorneys

All of the attorneys involved in this case, those representing Royal Crown and those representing the various Defendants, are lawyers of wide experience, excellent reputation, and unquestioned ability.

### The "undesirability" of the Case

Not applicable.

### The Nature and Length of the Professional Relationship with the Client

Not applicable.

### Awards in Similar Cases

While no two antitrust cases are alike and seldom similar, it is the Court's view that the award which will be hereinafter made is reasonable in light of awards made in other antitrust cases.

The Court finds that the amount of the fees paid by Royal Crown to its attorneys was reasonable and should be reimbursed in full, except in those instances in which the Court determines that no fee should be allowed or that there should be an adjustment because of a special circumstance.

■ This specialized and sophisticated antitrust action, with nationwide implications, required all parties to retain counsel with experience and expertise in such matters and each such counsel's normal billing rates should apply unless the fee arrangement was negotiated in the open market, in which event the fee may be greater or less than it would be based on the hourly rate.

Royal Crown was represented by three law firms: Willkie Farr & Gallagher of New York City; Wiley, Rein & Fielding of Washington, D.C.; and Hatcher, Stubbs, Land, Hollis & Rothschild of Columbus, Georgia; and members of these firms have submitted affidavits and detailed statements justifying the fees paid to them by Royal Crown. The hourly rates charged by Willkie Farr & Gallagher are reasonable because they are within the range of fees

charged by New York law firms and are the rates customarily charged to other clients of that firm. The hourly rates charged by Wiley, Rein & Fielding are reasonable because they are within the range of fees charged by Washington law firms and are the rates customarily charged to other clients of that firm. The fees charged by Hatcher, Stubbs, Land, Hollis & Rothschild were based upon hourly rates customarily charged to other clients of that firm, augmented by a lump sum payment required by an advance contractual arrangement between the firm and Royal Crown, the purpose of which was to compensate the firm for the unusual demands made upon it by the press of time, the result of which was to effectively preclude the firm from undertaking other business for a period of several weeks. This is one of the *Johnson* criteria and the arrangement was made by Royal Crown in the open market when it had no assurance that it would ever be reimbursed.

The total of the fees originally claimed to have been paid by Royal Crown to its team of attorneys was $1,326,702, but, upon later discovery that clerical errors in computation amounting to $1,657 had been made, this figure was reduced to $1,325,045.

 Two of the objections which have been raised by the Defendants to Royal Crown's application concern discrete activities undertaken by Royal Crown which the Defendants contend were unnecessary and therefore noncompensable. Specifically, the Defendants oppose Royal Crown's request for reimbursement of fees related to its advocacy before the FTC and its *amicus* participation in the case of *Cargill, Inc. v. Monfort of Colorado, Inc.,* —— U.S. ——, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986).

In urging a denial of Royal Crown's time at the FTC prior to the time of the filing of its complaint in this court the Defendants contend that Royal Crown has not met the standard articulated in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* —— U.S. ——, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) wherein it is stated that

"[F]or the time spent pursuing optional administrative proceedings properly to be included in the calculation of a reasonable attorney's fee, the work must be 'useful and of a type ordinarily necessary' to secure the final result from the litigation."

*Id.* 106 S.Ct. at 3096 (quoting *Webb v. Board of Educ. of Dyer County,* 471 U.S. 234, 243, 105 S.Ct. 1923, 1928–29, 85 L.Ed. 2d 233 (1985). So, under *Delaware Valley,* Royal Crown deserves compensation for its advocacy at the FTC if such advocacy was both "useful" and "ordinarily necessary" in thwarting the proposed acquisitions. The Court determines that this advocacy was useful and necessary for it is clear that if the FTC had decided for political reasons not to file suit, Royal Crown would have faced the overwhelming resources of the four largest concentrate manufacturers and seven nationally prominent law firms and would have had to displace the procompetitive presumption that would have followed by the FTC's approval of the acquisitions. These would have been formidable obstacles, and no prudent antitrust lawyer would forego a reasonable opportunity to avoid them. Not to have advocated before the FTC would have been imprudent as a matter of legal strategy.

Royal Crown's advocacy in the Supreme Court in the *Cargill* case was also directly related to this action because in that case the United States Department of Justice and the Federal Trade Commission had urged the Supreme Court to adopt a rule "denying competitors standing to challenge acquisitions on the basis of predatory pricing theories." In an effort to preserve its option to challenge the Seven–Up and Dr Pepper acquisitions on a predator-related theory Royal Crown had argued against the Government's position in *Monfort.* In its decision the Supreme Court sided with Royal Crown's position and declined to adopt a broad bar against competitor standing. The significance of the question of competitor standing as related to this case became apparent during the course of the hearing conducted by this Court with regard to Royal Crown's request for a restraining order when counsel for one of the Defendants specifically urged the Govern-

ment's position in the *Monfort* case to contend that Royal Crown had no standing to challenge the proposed acquisitions. Had the Government's position prevailed in *Monfort,* resulting in the Supreme Court's fashioning a broad bar against competitor standing, Royal Crown may have missed its option to bring this case. To preserve that option was undoubtedly reasonable and necessary under the *Delaware Valley* standard.

Royal Crown undertook its FTC and *Monfort* advocacy solely to block the proposed acquisitions, and because Royal Crown's work on each of these matters was directly related to its success in this court the fees associated with that work are compensable.

■ Another objection raised by the Defendants relates to whether fees associated with certain personnel are compensable. Specifically, they seek to exclude the request for fees covering paralegals and summer law clerks. It is the Court's view that this objection is not well-founded because the use of paralegals and summer law clerks substantially reduced the number of attorney hours which would otherwise have been required and consequently the overall cost of this litigation, and courts generally favor the use of such personnel and grant fees for their time as an inducement to increase their utilization in complex litigation.

■ The Court is convinced, as the Defendants contend, that when three separate law firms are working on a case at the same time it is inevitable that there is an amount of duplication of effort which results in some duplicate billing for services. It is impossible to demonstrate precisely when it occurs, or where it occurs, but it does occur, and has occurred in this case. No exact figure can be determined as an offset against the total billings, but based upon the Court's experience and observation it is felt that 5% of the total is appropriate in this case, and the application of this percentage results in a deduction of $66,252.

■ It also appears that counsel billed Royal Crown for time spent in media relations (preparing press releases, etc.) and in lobbying Congress to encourage opposition to the planned acquisitions while this case was pending, and that Royal Crown was billed for the time spent by counsel in monitoring the administrative complaint and opposing the dismissal of the complaint before the FTC *after* they had obtained injunctive relief in this court and after this case had been concluded. These were perfectly legitimate endeavors but they had no bearing on the merits of this action and therefore are not compensable. The Court's best estimate is that these items total approximately $10,000 and should be disallowed.

■ Further, it appears that counsel billed Royal Crown for time spent monitoring other private litigation involving these transactions as well as various investigations by state agencies regarding the transactions. The time spent on these matters did not contribute to the results of this litigation and the Defendants are not obligated to reimburse the Plaintiff for fees paid for this activity. The Court's best estimate is that these billings total approximately $5,000 and are disallowed.

■ So, at this point we have determined that the valid claim which may be made by Royal Crown for fees paid to its attorneys through March 31, 1987, is $1,243,793, and to this there must be added the amount it is entitled to claim for costs and expenses.

As has already been noted, $285,889.64 of Royal Crown's total claim is for reimbursement for costs and expenses incurred by its counsel. The items claimed are described as follows:

| | |
|---|---|
| Expert Witness Fees | $69,965.63 |
| Managing Attorneys' Office | 1,157.50 |
| Library | 1,612.50 |
| Lexis | 23,703.75 |
| Secretarial Overtime | 4,916.25 |
| Word Processing | 11,740.68 |
| Proof Readers | 831.25 |
| Telephone | 1,754.77 |
| Telex | 23.21 |
| Messengers | 3,323.80 |
| Postage | 171.29 |
| Air Freight | 2,169.78 |

| | |
|---|---|
| Travel | $43,894.48 |
| Duplicating | 65,308.26 |
| Conference Services | 1,390.61 |
| Car Fare | 6,776.03 |
| Meals | 1,753.77 |
| Data Acquisition | 9,163.08 |
| Database Research | 1,795.30 |
| Supplemental Paralegal | 17,435.00 |
| Transcript Costs | 2,247.00 |
| Special Services | 1,344.51 |
| Court Reporters | 123.83 |
| Car Rentals | 237.50 |
| Local Counsel Fee | 771.38 |
| Filing & Recording Costs | 212.00 |
| Miscellaneous Expenses and Disbursements Not Specifically Categorized | 12,066.50 |

In light of the recent decision by the Supreme Court in *Crawford Fitting Co. v. Gibbons*, —— U.S. ——, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), the only items above listed which may be properly claimed for reimbursement are:

| | |
|---|---|
| Transcript Costs | $2,247.00 |
| Court Reporters | 123.83 |
| Local Counsel Fee | 771.38 |
| Filing and Recording Costs | 212.00 |
| Total | $3,354.21 |

The other items claimed are disallowed.

When added to the attorneys' fee total previously determined, the amount which Royal Crown may validly claim for attorneys' fees and cost and expense disbursements as of April 23, 1987, is $1,247,147, and the proportionate shares of responsibility of the respective Defendants based upon the previously approved allocation formula would be:

| | | |
|---|---|---|
| Coca–Cola | $ 366,805 | (29.41152%) |
| Pepsico | 256,768 | (20.58844%) |
| Dr Pepper | 366,805 | (29.41152%) |
| Seven–Up | 256,768 | (20.58844%) |
| | $1,247,146 | |

Since March 31, 1987, Royal Crown has incurred additional attorneys fee charges and expenses in connection with the active litigation of its claim for attorneys' fees and expenses and has filed a supplemental request for an additional award of $121,288 ($112,229 being allocated to attorneys' fees and $9,058.71 being allocated to expenses). The expense items claimed are described as follows:

| | |
|---|---|
| Photocopying | $1,109.70 |
| Couriers and delivery | 232.00 |
| Database Research | 137.25 |
| Long Distance Telephone Calls | 417.83 |
| Telecopier Charges | 86.28 |
| Postage | 47.08 |
| Xeroxing | 70.35 |
| Computer Research | 58.15 |
| Federal Express Charges | 29.75 |
| Disbursements Not Specifically Categorized | 6,870.32 |

In the Court's view none of these expense items are reimbursable and are therefore disallowed. This leaves the figure of $112,229 which is claimed for attorneys' fees, and the Court finds this amount to be adequately supported and reasonable in the circumstances, and since there is no reason to make any distinction between the four Defendants with regard to this feature, 25% of the amount of these attorneys' fees ($28,057) is chargeable to each Defendant and this makes the share of the total claims, as supplemented, chargeable to the respective Defendants as follows:

| | |
|---|---|
| Coca–Cola | $ 394,862 |
| Pepsico | 284,825 |
| Dr Pepper | 394,862 |
| Seven–Up | 284,825 |
| | $1,359,374 |

Consistent with the foregoing determination, it is directed that judgments be entered in favor of Royal Crown Cola Co. against The Coca–Cola Company in an amount of $394,862 and against Pepsico, Inc. in the amount of $284,825 and against Dr Pepper Co. in the amount of $394,862.

The Court takes note of the fact that during the pendency of this matter Royal Crown and Seven–Up entered into a settlement agreement, in consequence of which Royal Crown has dismissed its claims against Seven–Up.