**Edgardo SANTIAGO–SÁNCHEZ, Plaintiff,**

v.

**GATE ENGINEERING CORP., Defendant.**

**Civil No. 01–2685(JAG)(JA).**

United States District Court, D. Puerto Rico.

Oct. 15, 2003.

Ruben Gonzalez, Rio Piedras, PR, Felix R. Passalacqua–Rivera, Santurce, PR, for Plaintiff.

Raymond E. Morales–Ortiz, Miguel E. Gierbolini–Gierbolin, San Juan, PR, for Defendant.

## OPINION AND ORDER

ARENAS, United States Magistrate Judge.

This matter is before the court on motion for summary judgment filed by the defendant Gate Engineering Corp. ("Gate"). (Docket No. 20.) Plaintiff Edgardo Santiago–Sanchez ("Santiago") opposes defendant's motion and moves for summary judgment as well. (Docket No. 25.) There being no controversy as to the facts, the only question present for resolution by the court is whether either party is entitled to judgment as a matter of law.

## FACTUAL BACKGROUND

The following facts are undisputed. Santiago worked as a maintenance employee for Watpro Services, Inc. ("Watpro"). Watpro provided maintenance and janitorial services under contract to several federal facilities in Puerto Rico, including the federal building in which this court sits. On October 28, 1999, Santiago was terminated from employment at Watpro due to an alleged pattern of absenteeism. Not satisfied with the decision, Santiago filed a grievance through his labor organization—Central Federation of Workers—at the Bureau of Conciliation and Arbitration of the Puerto Rico Department of Labor and Human Resources ("Bureau"). An arbitrator at the Bureau held that Santiago did not breach the absence and tardiness policy that prevailed at Watpro by virtue of the Collective Bargaining Agreement ("CBA") between Watpro and the labor

organization. An arbitration award was issued holding that Santiago's termination was wrongful and ordering Watpro to, among other things, immediately reinstate Santiago to his position. Watpro never complied.

In December of 2000, Gate started providing the janitorial services formerly provided by Watpro. General Services Administration ("GSA")[1] contracted the services of Gate after Watpro announced its intention to cease providing the maintenance services at the federal facilities. The contract between GSA and Gate was originally entered into for the period of one month. It was extended on a month-to-month basis until GSA adjudicated bids submitted by other contractors. Gate is not a bidder in said process.

When Gate assumed the maintenance services, GSA requested that the same employees that had been working for Watpro be hired. Santiago did not appear on the list of employees, consequently, he was not hired. On November 17, 2000, the Central Federation of Workers notified Wanda Cadilla, a GSA official, of the arbitration award ordering Santiago's reinstatement. The labor organization also sent a letter to Gate's president on February 2, 2001, regarding the arbitration award and alerting Gate that Santiago had not yet been reinstated. The efforts of the labor organization to have Santiago reinstated were to no avail.

Santiago filed a complaint in the Puerto Rico Court of First Instance, Bayamón Superior Part, seeking a declaration that Gate was the "successor employer" of Watpro. The complaint also sought an order reinstating Santiago to his prior position and an award of damages for the lost

---

1. GSA is the company that subcontracts      maintenance services at the federal facilities.

wages and benefits he failed to earn. Gate removed the case to this court pursuant to 28 U.S.C. §§ 1441, 1446, claiming that the arbitration award in question came about as a result of the CBA between Watpro and the labor organization, and that the enforcement of said arbitration award arises under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. (Docket No. 1.) On January 14, 2002, Santiago opposed removal and sought remand to the state court. (Docket No. 4.)

The court, by way of an opinion and order issued on February 20, 2002, held that this court has subject matter jurisdiction over Santiago's "successor employer" claim and the enforcement of the arbitration award. Accordingly, the court denied Santiago's motion for remand. (Docket No. 6, at 7.) *See Santiago–Sánchez v. Gate Eng'g, Corp.*, 193 F.Supp.2d 392, 396 (D.P.R.2002).

The parties filed cross-motions for summary judgment. (Docket Nos. 20, 25.) Both parties claim that they are entitled to judgment as a matter of law. Since there is no controversy as to the facts in this case, I consider whether either party is entitled to judgment as a matter of law. *See Quintero de Quintero v. Aponte–Roque*, 974 F.2d 226, 228 (1st Cir.1992).

## DISCUSSION

Gate contends that, based on the particular facts of this case and the totality of the circumstances, it cannot be considered Watpro's successor. Thus, it cannot be required to honor an arbitration award entered under the terms of a CBA negotiated by Watpro and the labor organization representing Watpro's employees. In the alternative, Gate argues that even if found to be Watpro's successor, the obligation to honor the arbitration award cannot be im-

posed upon it. According to Gate, it expressly refused to be bound by the terms of the CBA in a stipulation negotiated and entered into with the union. In addition, Gate claims that the CBA had expired at the time it hired Watpro's employees.[2] In Gate's opinion, all these circumstances warrant the entry of summary judgment in its favor. Santiago argues, to the contrary, that it is he who should be favored on summary disposition. He claims that Gate is a successor employer because it substantially continued Watpro's business identity. It did so, according to Santiago, by maintaining a substantially similar operation of the janitorial services previously performed by Watpro. It is further claimed by Santiago that a factor particularly poignant of Gate's successorship is the hiring of the same workforce previously employed by its predecessor. In sum, Santiago claims that Gate is indeed Watpro's successor and therefore should be required to honor the arbitration award that ordered his reinstatement.

As noted, the specific question before the court is whether Gate was the successor employer of Watpro so as to be bound by the arbitration award ordering the reinstatement of Santiago. Such a determination requires the court "to navigate the treacherous waters of the Supreme Court's labor law successorship doctrine....." *Ameristeel Corp. v. Int'l Bhd. of Teamsters*, 267 F.3d 264, 267 (3rd Cir.2001).

### I. *The Law of Successorship*

■ The determination of successorship is a matter purely within the ambit of federal law. *See Howard Johnson Co. v. Detroit Local Joint Executive Bd., Hotel & Rest. Emp. & Bartenders Int'l Union, AFL–CIO*, 417 U.S. 249, 255–56, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974); *see also Santiago–Sánchez v. Gate Eng'g, Corp.*, 193

---

**2.** Gate does not elaborate this theory further.    Therefore, I will not address such argument.

F.Supp.2d at 396. "State law may be utilized so far as it is of aid in the development of correct principles or their application in a particular case..." *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 548, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). Indeed, jurisdiction in successor employer cases is grounded in section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), which provides:

(a) Venue, amount, and citizenship

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

Title 29 U.S.C. § 185(a).

The Supreme Court has applied the doctrine of successor employer in three basic contexts. First, the Court has in appropriate cases extended to the successor employer the obligation to submit to arbitration under a collective bargaining agreement entered into by its predecessor. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. at 548, 84 S.Ct. 909. Second, it has imposed on the successor employer the duty to recognize and bargain with the union. *Fall River Dyeing & Finishing Corp. v. N.L.R.B.*, 482 U.S. 27, 29, 107 S.Ct. 2225, 96 L.Ed.2d 22 (1987); *N.L.R.B. v. Burns Int'l Sec. Servs., Inc.*, 406 U.S. 272, 281–82, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972). Finally, the Court has also imposed on the successor employer the obligation to honor unfair labor practice awards issued against the predecessor employer. *Golden State Bottling Co. v. N.L.R.B.*, 414 U.S. 168, 94 S.Ct. 414, 38

L.Ed.2d 388 (1973). I analyze the relevant cases chronologically.

In *Wiley*, the predecessor employer, Interscience, merged into John Wiley & Sons. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. at 545, 84 S.Ct. 909. Shortly after the merger, the union that represented 40 of Interscience's 80 employees, brought suit against John Wiley & Sons to compel arbitration under the terms of the bargaining agreement executed between the union and Interscience. *Id.* at 545–46. The Court held that, based on "the policy of our national labor laws," recognizing the "central role of arbitration" and the importance of "[protecting] ... employees from a sudden change in the employment relationship," the duty to arbitrate survived the Interscience/Wiley merger. *Id.* at 548–50. The Court phrased its holding in the following terms:

We hold that the disappearance by merger of a corporate employer which has entered into a collective bargaining agreement with a union does not automatically terminate all rights of the employees covered by the agreement, and that, in appropriate circumstances, present here, the successor employer may be required to arbitrate with the union under the agreement.

*Id.* at 548. The Court further stated: "[w]e do not hold that in every case in which the ownership or corporate structure of an enterprise is changed the duty to arbitrate survives." *Id.* at 551. There must be a "*substantial continuity of identity in the business enterprise.*" *Id.* (emphasis added). Otherwise, the duty to arbitrate would be "something imposed from without, not reasonably to be found in the particular bargaining agreement and the acts of the parties involved." *Id.*

The Court had to revisit the doctrine of successor employer in *N.L.R.B. v. Burns Int'l Sec. Servs., Inc.* In *Burns*, the Wack-

enhut Corporation provided plant protection and security services at a Lockheed Aircraft Service Plant. *N.L.R.B. v. Burns Int'l Sec. Servs., Inc.*, 406 U.S. at 274. The successor, Burns International Security Services, took over the security contract after outbidding Wackenhut. *Id.* at 274–75. Burns hired a majority of its employees from Wackenhut (27 out of 42). *Id.* at 274. The union filed an unfair labor practice charge with the National Labor Relations Board (hereinafter "NLRB") after Burns refused to honor the existing CBA. *See id.* at 275–76. The NLRB ordered Burns to comply with the existing CBA. *Id.* at 276.

The Court reversed the NLRB explaining that a successor employer cannot be bound against its will to the substantive terms of an existing CBA. *Id.* at 284. The Court observed, however, that the successor employer may be bound to recognize and bargain with the union. *Id.* The reasoning of the Court was that since Burns "in no way agreed" to the existing CBA, it could not be compelled to accept the agreement against its will. *Id.* at 287.

The holding in *Burns* appears to be in direct conflict with the Court's previous decision in *Wiley. Ameristeel Corp. v. Int'l Bhd. of Teamsters*, 267 F.3d at 270. In other words, a successor employer may be required to arbitrate as provided in an existing CBA, but is not bound by any other substantive term of said agreement. The *Burns* Court attempted to distinguish *Wiley.* The first distinction noted by the Court is that *Wiley* arose out of a suit to compel arbitration whereas *Burns* involved an unfair labor practice proceeding. *N.L.R.B. v. Burns Int'l Sec. Servs., Inc.*, 406 U.S. at 285–86. The Court also suggested that another distinction between

the two cases was the fact that *Wiley* involved a merger which triggered the general state law principle that the surviving corporation is liable for the obligations of the disappearing corporation. *Id.* at 286. In *Burns*, the successor merely took over a contract for services even though it hired a majority of the predecessor's employees. This second distinction has been subsequently noted with approval by the Court, *see Howard Johnson Co. v. Detroit Local Joint Executive Bd.*, 417 U.S. at 257, 94 S.Ct. 2236, and later downplayed as determinative of the successor's labor obligations. *Ameristeel Corp. v. Int'l Bhd. of Teamsters*, 267 F.3d at 271 n. 2 (citing *Fall River Dyeing & Finishing Corp. v. N.L.R.B.*, 482 U.S. at 44 n. 10, 107 S.Ct. 2225).[3]

In 1973, the Court once again examined the obligations of a successor employer. In *Golden State Bottling Co. v. N.L.R.B.*, the Court held that a successor employer, who had purchase the assets of its predecessor, was obligated to rehire an individual and was jointly liable for the backpay awarded by the NLRB in an unfair labor practice claim brought against the predecessor. *Golden State Bottling Co. v. N.L.R.B.*, 414 U.S. at 174–76, 94 S.Ct. 414. The Court noted, in other words, that in cases where there has been a substantial acquisition of assets, and where the successor employer had knowledge that the NLRB had ordered the reinstatement and compensation, the successor employer was obligated to remedy the unfair labor practices of its predecessor. *See id.* Such result was mandated in light of industrial peace as a goal and reasonable employee expectations. *See id.* at 174, 184.

---

**3.** "[T]he way in which a successor obtains the predecessor's assets is generally not determinative of the 'substantial continuity' ques-

tion." *Fall River Dyeing & Finishing Corp. v. N.L.R.B.*, 482 U.S. at 44 n. 10, 107 S.Ct. 2225.

One year later the Court revisited the issue of whether a successor employer should be compelled to arbitrate. In *Howard Johnson Co. v. Detroit Local Joint Executive Bd.*, the Howard Johnson Co. purchased the assets of a restaurant and motor lodge. *Howard Johnson Co. v. Detroit Local Joint Executive Bd.*, 417 U.S. at 250, 94 S.Ct. 2236. It hired only a small fraction of the predecessor's employees (9 out of 53). *Id.* at 252, 94 S.Ct. 2236. The union, which represented the employees of the previous operators, had successfully concluded collective-bargaining agreements with them. *Id.* at 250, 94 S.Ct. 2236.

The Court was faced with the conflict created by the holdings in *Wiley* and *Burns*. See *Ameristeel Corp. v. Int'l Bhd. of Teamsters*, 267 F.3d at 271. However, it chose not to resolve the conflict. Instead, the Court decided the case on its particular facts finding that it was distinguishable from *Wiley*. See *id.* In doing so, the Court reversed the courts below which had found under *Wiley* that Howard Johnson Co. had to arbitrate under the CBA. The reasoning of the Court was that "even on its own terms, *Wiley* [did] not support the decision of the courts below." *Howard Johnson Co. v. Detroit Local Joint Executive Bd., Hotel & Rest. Emp. & Bartenders Int'l Union, AFL–CIO*, 417 U.S. at 256, 94 S.Ct. 2236. The most important distinction between *Wiley* and *Howard Johnson* was, according to the Court, that the latter hired only 9 of the 53 employees of the predecessor while the former had hired the entire work force of the disappearing corporation. *Howard Johnson Co. v. Detroit Local Joint Executive Bd., Hotel & Rest. Emp. & Bartenders Int'l Union, AFL CIO*, 417 U.S. at 258, 94 S.Ct. 2236. Since Howard Johnson Co. hired so few of the predecessor's employees, the Court found that it lacked the "substantial continuity of identity in the business enterprise" that the *Wiley's* holding requires before a successor employer may be compelled to arbitrate. *Id.* at 263, 105 S.Ct. 1923. The Court, thus, declined to address whether there was an irreconcilable conflict between *Wiley* and *Burns*.

The Supreme Court's discussion in *Howard Johnson* is nonetheless important for it expands on what factors a court must consider in determining when a defendant qualifies as a successor employer. The lower court in *Howard Johnson* stated that in order to resolve the issue in the case, it had to face two questions. *Id.* at 264 n. 9, 94 S.Ct. 2236. First it had to determine if Howard Johnson Co. was a successor employer. *Id.* Finding that it was, then the court had to decide whether it was required to arbitrate. *Id.* Addressing the lower court's approach, the Court observed that the question of whether an employer is a successor is simply not meaningful in the abstract. *Id.* The Court criticized the lower court's artificial division describing it as an unhelpful and inappropriate way to approach the problem. *Id.* It further stated that:

> the real question in each of these "successorship" cases is, on the particular facts, what are the legal obligations of the new employer to the employees of the former owner or their representative? The answer to this inquiry requires analysis of the interests of the new employer and the employees and of the policies of the labor laws in light of the facts of each case and the particular legal obligation which is at issue, whether it be the duty to recognize and bargain with the union, the duty to remedy unfair labor practices, the duty to arbitrate, etc. There is, and can be, no single definition of "successor" which is applicable in every legal context. A new employer, in other words, may be a suc-

cessor for some purposes and not for others.

*Howard Johnson Co. v. Detroit Local Joint Executive Bd., Hotel & Rest. Emp. & Bartenders Int'l Union, AFL–CIO,* 417 U.S. at 264 n. 9.

The Supreme Court finally approved the above-discussed "substantial continuity" approach in *Fall River Dyeing & Finishing Corp. v. N.L.R.B.,* 482 U.S. at 43, 107 S.Ct. 2225. According to the Court, the determination of whether a new company is a successor to the old company is factual in nature and must be "based upon the totality of the circumstances of a given situation." *Id.* The focus must be on whether there is a substantial continuity in the enterprises, namely "whether the new company has 'acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations.'" *Id.* (quoting *Golden State Bottling Co. v. N.L.R.B.,* 414 U.S. at 184, 94 S.Ct. 414). Other factors must also be considered:

> whether the business of both employers is essentially the same; whether the employees of the new company are doing the same jobs in the same working conditions under the same supervisors; and whether the new entity has the same production process, produces the same products, and basically has the same body of customers.

*Fall River Dyeing & Finishing Corp. v. N.L.R.B.,* 482 U.S. at 43, 107 S.Ct. 2225. The Court further instructs that under this analysis, there must be kept in mind the question of whether "those employees who have been retained will understandably view their job situation as essentially unaltered." *Id.* (quoting *Golden State Bottling Co. v. N.L.R.B.,* 414 U.S. at 184, 94 S.Ct. 414). This in turn furthers the Act's goal of industrial peace. *Id.*

With these principles as a guide, I consider the ultimate question in this case: whether Gate was the successor employer of Watpro so as to be required to honor an arbitration award issued against its predecessor.

## II. *Application of Law to Facts*

■ The Third Circuit's characterization of labor-law successorship cases as "treacherous waters" is indeed appropriate. In this circuit, the difficulty of these cases has been attributed to the fact that "the pertinent doctrines have confusing labels, overlap with one another and occasionally mutate." *N.L.R.B. v. Hospital San Rafael, Inc.,* 42 F.3d 45, 48 (1st Cir. 1994). The facts of this case, being so dissimilar to any of the circumstances previously examined by the Supreme Court, makes the task even more cumbersome.

■ After examination of the totality of the circumstances surrounding this case, it must be concluded that Gate is Waptro's successor with respect to the particular situation in question here. However, I need not dwell too much on the issue for the caselaw in this area is clear that an unconsenting successor employer cannot be bound by the substantive terms of a CBA entered into between its predecessor and an union. *See Fall River Dyeing & Finishing Corp. v. N.L.R.B.,* 482 U.S. at 40 (reaffirming the assertion that a successor is not bound by the substantive terms of a predecessor's collective bargaining agreement); *see also N.L.R.B. v. Hospital San Rafael, Inc.,* 42 F.3d at 50. A similar result is compelled by Gate's express refusal to be bound by the terms of such CBA.

In essence, the plaintiffs correctly argue that Gate is Watpro's successor employer. The undisputed evidence in the record shows that when Gate agreed to hire all the employees that under Watpro had been performing the maintenance services

in the federal facilities, a substantial continuity in the business enterprise and in the work force existed after the change of ownership.[4] *See Howard Johnson Co. v. Detroit Local Joint Executive Bd., Hotel & Rest. Emp. & Bartenders Int'l Union, AFL–CIO*, 417 U.S. at 262–63. The record distinctively shows that in order to avoid disruption of the services, GSA provided Gate with a list of employees currently working at the federal facilities and required Gate to continue their employment. (Defendant's Statement of Uncontested Facts, Docket No. 20, Exh. A, B.) The same janitorial and maintenance services were performed at the same facilities and under the same working conditions. The business of both employers, as it relates to the contract for janitorial services in the federal facilities, is the same. To be sure, Gate continued Watpro's business operation without interruption or substantial change. *Fall River Dyeing & Finishing Corp. v. N.L.R.B.*, 482 U.S. at 43, 107 S.Ct. 2225 (quoting *Golden State Bottling Co. v. NLRB*, 414 U.S. at 184, 94 S.Ct. 414). Furthermore, Watpro's former employees (now Gate's) viewed their employment situation as essentially unaltered given that the compensation and existing financial terms of employment remained intact when Watpro assumed the janitorial services contract. (*See* Stipulation Between Gate and the Union, Docket No. 20, Exh. C.) The goals of industrial peace are furthered by a finding of successorship.

Yet, notwithstanding my finding that in the context of this case, Gate is the successor employer of Watpro, it does not necessarily follows that Gate is responsible for the arbitration award ordering Santiago's reinstatement. Being a successor employer is a condition *sine qua non* extra-contractual duties of the predecessor cannot be imposed. However, a successor employer is not always liable for the duties and responsibilities of its predecessor. As discussed above, the Supreme Court has under certain circumstances imposed on the successor the duty to arbitrate under the terms its predecessor's CBA. *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. at 548, 84 S.Ct. 909; *Howard Johnson Co. v. Detroit Local Joint Executive Bd., Hotel & Rest. Emp. & Bartenders Int'l Union, AFL–CIO*, 417 U.S. at 262–63, 94 S.Ct. 2236. It has also held that a successor may be responsible in limited circumstances for an unfair labor practices awards issued against its predecessor. *See Golden State Bottling Co. v. N.L.R.B.*, 414 U.S. at 174–76, 94 S.Ct. 414. But the Court has been clear in stating that an unconsenting successor employer cannot be bound by the substantive terms of the CBA entered into by its predecessor. *Fall River Dyeing & Finishing Corp. v. N.L.R.B.*, 482 U.S. at 29, 107 S.Ct. 2225; *N.L.R.B. v. Burns Int'l Sec. Servs., Inc.*, 406 U.S. at 281–82, 92 S.Ct. 1571.

Here, the duty to submit to arbitration is not the issue. We are in the presence of an arbitration award ordering reinstate-

---

**4.** Gate argues that there are certain facts that work against a finding of successorship. It is claimed by Gate that this case does not involve purchase of assets, stock, or equipment of the predecessor. Gate is dedicated to mechanical maintenance rather than janitorial services. Also, Gate has its own supervisors and operate from its own administrative offices. Gate contends that it has its own machinery, equipment and method of service. Finally, it is argued by Gate that the janitorial services contract was granted on a temporary basis (although it continues today) until bids are adjudicated. Nevertheless, the product of both employers was the same: the janitorial services provided by the same employees, under the same work conditions and to the same customers. Viewing these factors in terms of quality and not quantity, there is clearly a substantial continuity in the business enterprise.

ment of an employee that was issued prior to the successor's assumption of the services contract. Also, the arbitration award was brought about under the terms of the predecessor's CBA. Therefore, it is evident that neither *Wiley* nor *Howard Johnson Co., Inc.* are applicable.

The case with a more similar factual scenario is *Golden State Bottling Co.* given that in that case, the Court imposed on the successor the duty to remedy its predecessor's unfair labor practices holding that the successor was obligated to reinstate the employee and was jointly liable for a back pay award issued by the N.L.R.B. *Golden State Bottling Co. v. N.L.R.B.*, 414 U.S. at 174–76, 94 S.Ct. 414. Nevertheless, that case is similarly inapplicable. The Court in that case stated that the successor employer is obligated to remedy the unfair labor practices of its predecessor only where there has been a substantial acquisition of assets and the successor employer has knowledge of the N.L.R.B.'s order. *See id.* In this case, Gate did not acquire any assets, stock, or equipment from its predecessor and there is nothing in the record allowing me to conclude that prior to assuming the janitorial services contract, Gate had knowledge of the arbitration award against Watpro.

To the contrary, Santiago attempts to impose on Gate an arbitration award of which it had no knowledge at the time it took over Watpro's janitorial services contract. Additionally, the arbitration award was issued before Gate commenced the maintenance operation and by virtue of a CBA that Gate is neither a part of nor negotiated any of its terms with the union. I find that such an attempt is precluded by the Supreme Court's teaching that a successor employer cannot be bound against its will by the substantive terms of collective bargaining agreement negotiated and entered into by its predecessor. *Fall Riv-*

*er Dyeing & Finishing Corp. v. N.L.R.B.*, 482 U.S. at 29; *N.L.R.B. v. Burns Int'l Sec. Servs, 92 S.Ct. 1571., Inc.*, 406 U.S. at 281–82. Simply put, since the arbitration process and subsequent award issued against Watpro was brought under the terms of a CBA between Watpro and the union, Gate cannot be obligated without its consent to comply with such award.

Moreover, the record is clear that before assuming the maintenance operations previously performed by Watpro, Gate negotiated and entered into a stipulation with the union. Such stipulation specifically states that Gate "does not have nor will it have any responsibilities under the previous contract." (Docket No. 20, Exh. C.) Santiago does not even address the effect of such stipulation. Consequently, I find that as an unconsenting successor, Gate cannot be bound by the substantive terms of its predecessor's agreement. Since Gate has no obligations under the CBA entered into between Watpro and the union, no arbitration award issued by virtue of said CBA can receive judicial sanction. *See Ameristeel Corp. v. Int'l Bhd. of Teamsters*, 267 F.3d at 277.

In sum, although I find that Gate is Watpro's successor employer, I do not find that the arbitration award in this case must be honored by Gate. In other words, a successor employer does not acquire all duties and liabilities of its predecessor simply because of its successor label. It has to be demonstrated that, as a matter of law, the successor is liable for the particular duty or responsibility at issue in the case, be it a duty to arbitrate, the responsibility of honoring an unfair labor practice award, or the duty to recognize, bargain with the union, etc. The successor cannot be compelled to accept the substantive terms of a CBA it did not negotiate and to which it was not a part of. Therefore, there being no dispute as to the facts in

this case, Gate is entitled to judgment as a matter of law.

### CONCLUSION

In view of all of the above, I find that notwithstanding Gate's status as a successor employer, it cannot be compelled to honor an arbitration award issued against its predecessor under the terms of an existing collective bargaining agreement. There being no factual controversy, I find that Gate is entitled to judgment as a matter of law. Accordingly, Gate's motion for summary judgment is GRANTED. Santiago's motion for summary judgment is DENIED.

The Clerk of Court will enter judgment dismissing the case in its entirety.

SO ORDERED